IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HERITAGE SOUTHWEST MEDICAL | § | Case No. 01-30212-BJH-7 |
| GROUP, P.A., | § | (Chapter 7) |
| | § | |
| Debtor. | § | |
| _____ | § | |
| AETNA LIFE INSURANCE CO., | § | |
| AETNA U.S. HEALTHCARE, INC., ET AL., | § | |
| | § | |
| Appellants, | § | |
| | § | Civil Action No. 3:10-cv-00684-L |
| v. | § | |
| | § | |
| KENNETH KOLLMEYER, M.D., | § | |
| LAWRENCE ALTER, M.D., ET AL., | § | |
| | § | |
| Appellees. | § | |

On Appeal From The United States Bankruptcy Court
For The Northern District of Texas, Dallas Division,
Chapter 7 Case No. 01-30212-BJH-7; Adversary No. 04-3005-BJH

# BRIEF OF APPELLANTS

Jason S. Brookner
ANDREWS KURTH LLP
1717 Main Street, Suite 3700
Dallas, Texas  75201
Telephone: (214) 659-4400
Facsimile:  (214) 659-4401

John B. Shely
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas  77002
Telephone: (713) 220-4200
Facsimile:  (713) 220-4285

ATTORNEYS FOR APPELLANTS

## LIST OF PARTIES AND COUNSEL

**Appellants**

Aetna Life Insurance Company, Aetna Health Inc. (formerly known as Aetna U.S. Healthcare Inc. and successor-in-interest to Aetna U.S. Healthcare of North Texas Inc.) and AET Health Care Plan, Inc. (collectively, the "Appellants" or "Aetna")

**Counsel for Appellants:**

Jason S. Brookner
Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, Texas  75201

John B. Shely
Andrews Kurth LLP
600 Travis, Suite 4200
Houston, Texas  77002

**Appellees**

Kenneth Kollmeyer, M.D., and Lawrence Alter, M.D., and providers identified in the exhibit to Appellants' Complaint (collectively, the "Appellees" or "Providers")

**Counsel for Appellees:**

Kevin D. McCullough
Rochelle McCullough
325 N. St. Paul, Suite 4500
Dallas, Texas 75201

J. Ken Johnson
Sylvia Davidow
Fleming & Associates, L.L.P.
1330 Post Oak Blvd., Suite 3030
Houston, Texas 77056-3019

HOU:3014951.6

# TABLE OF CONTENTS

LIST OF PARTIES AND COUNSEL ............................................................. i

REFERENCES TO THE RECORD ............................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ........................................ iv

TABLE OF AUTHORITIES ....................................................................... v

I.      JURISDICTIONAL STATEMENT ..................................................... 1

II.     STATEMENT OF ISSUES ............................................................... 1

III.    STANDARD OF REVIEW ............................................................... 2

IV.     INTRODUCTION AND SUMMARY ................................................. 3

V.      STATEMENT OF THE CASE .......................................................... 5

        A.      Nature Of The Case .......................................................... 5

        B.      Course Of Proceedings .................................................... 6

VI.     STATEMENT OF FACTS ............................................................... 8

        A.      Origin Of Dispute: Providers Seek Medicare Benefit
                Payments ......................................................................... 8

        B.      Providers' Belated Effort To Recover Medicare Benefit
                Payments ....................................................................... 10

        C.      Administrative Closure Of Providers' Adversary
                Proceeding ..................................................................... 11

        D.      The Post-Closing Decisions And Settlement With The
                Trustee ........................................................................... 12

        E.      Providers' Motion To Reopen Administratively Closed
                Case ............................................................................... 13

VII.    ARGUMENT AND AUTHORITIES ................................................ 15

        A.      The Bankruptcy Court Erred In Determining That
                Administratively Closed Proceedings Do Not Raise
                Issues Of Statutes Of Limitations, Plaintiffs' Diligence In
                Prosecuting Their Claims, Or Equitable Tolling ............... 15

HOU:3014951.6

B.    The Bankruptcy Court Erred In Determining That Providers Did Not Sleep On Their Rights Because The Fifth Circuit's *Rencare* Decision In 2004 Merely "Chipped Away" At The Doctrine Of Medicare Exhaustion And That The "Most Significant Decision" Was Not Handed Down Until Late 2007 By A Texas State Court ................................................................................... 23

C.    The Bankruptcy Court Erred In Determining That Aetna Did Not Allege Any Specific Facts To Establish Prejudice Should The Adversary Proceeding Be Reopened ........................................................................................ 28

D.    The Bankruptcy Court Erred In Determining The 2004 Order "Did Not Place Any Time Restrictions" On The Providers' Exhaustion Of Remedies And That It Would Be "Manifestly Inequitable" To Hold That A Deadline Existed ........................................................................................... 30

E.    The Bankruptcy Court Erred In Determining That Providers' Failure To Appeal The 2004 Order Has No Bearing On The Issue Of Whether Dismissal Of Providers' Case Is Appropriate Or Whether The Statute Of Limitations On The Underlying Claims Has Now Run ............... 33

VIII.   CONCLUSION ............................................................................. 36

CERTIFICATE OF SERVICE .................................................................... 39

## REFERENCES TO THE RECORD

| | |
|---|---|
| 2R96 | Bankruptcy Record on Appeal, volume 2, page 96. |
| 2010 Order | Bankruptcy Court's Memorandum Opinion and Order in *Kollmeyer v. Aetna Life Ins. Co. (In re Heritage)*, 423 B.R. 809 (Bankr. N.D. Tex. 2010). |
| 2004 Order | Bankruptcy Court's Memorandum Opinion and Order in *In re Heritage Sw. Med. Group, P.A.*, 309 B.R. 916 (Bankr. N.D. Tex. 2004). |

-iii-

## STATEMENT REGARDING ORAL ARGUMENT

Appellants believe that oral argument may aid the Court's deliberation concerning this case.   Accordingly, Appellants respectfully request oral argument in this appeal of the Bankruptcy Court's 2010 Order.

# TABLE OF AUTHORITIES

## CASES

*In re Allison,*
  960 F.2d 481 (5th Cir. 1992).................................................................. 2

*Am. Heritage Life Ins. Co. v. Orr,*
  294 F.3d 702 (5th Cir. 2002)................................................................ 15

*Baglione v. Clara Maass Med. Ctr., Inc.,*
  Civil Action No. 99-4069 (KSH), 2006 WL 2591119
  (D.N.J. Sept. 8, 2006)........................................................................... 21

*Boudwin v. Graystone Ins. Co.,*
  756 F.2d 399 (5th Cir. 1985)................................................................ 15

*Browning Mfg. v. Mims (In re Coastal Plains, Inc.),*
  179 F.3d 197 (5th Cir. 1999).................................................................. 3

*In re Cahill,*
  428 F.3d 536 (5th Cir. 2005).................................................................. 2

*Christus Health Gulf Coast v. Aetna, Inc.,*
  237 S.W.3d 338 (Tex. 2007) ................................................................ 23

*Compaq Computer Corp. v. Ergonome Inc.,*
  387 F.3d 403 (5th Cir. 2004).................................................................. 3

*Cont'l Airlines, Inc. v. Am. Airlines, Inc.,*
  824 F. Supp. 689 (S.D. Tex. 1993)...................................................... 23

*Cont'l S. Lines, Inc. v. Hilland,*
  528 S.W.2d 828 (Tex. 1975) ................................................................ 29

*Edwards v. Blue Cross Blue Shield of Tex.,*
  273 S.W.3d 461 (Tex. App.—Dallas 2008, pet. denied),
  *cert. denied*, 130 S. Ct. 1053 (2010)...................................................... 26

*England v. FDIC (In re England),*
  141 B.R. 495 (N.D. Tex. 1991), *aff'd*, 975 F.2d 1168 (5th
  Cir. 1992) .............................................................................................. 3

HOU:3014951.6

*Envtl. Procedures, Inc. v. Guidry,*
     282 S.W.3d 602 (Tex. App.—Houston [14th Dist.] 2009,
     pet. denied) ............................................................................... 22

*In re Equip. Lessors of Pa., Inc.,*
     No. 98-4752, 1999 U.S. Dist. LEXIS 8317 (E.D. Pa.
     May 26, 1999) ............................................................................ 29

*Ericsson, Inc. v. St. Paul Fire & Marine Ins. Co.,*
     423 F. Supp. 2d 587 (N.D. Tex. 2006) ...................................... 22

*Exxon Corp. v. Emerald Oil & Gas Co.,*
     ___ S.W.3d ___, No. 05-1076, 2009 WL 795668 (Tex.
     Mar. 27, 2009) ........................................................................... 22

*In re Gandy,*
     299 F.3d 489 (5th Cir. 2002)........................................................ 2

*In re Heritage Sw. Med. Group, P.A.,*
     309 B.R. 916 (Bankr. N.D. Tex. 2004) ........................... iii, 30, 31

*Hughes v. Neary (In re Hughes),*
     386 B.R. 624 (N.D. Tex. 2008), *aff'd*, 309 F. App'x 841
     (5th Cir. 2009) ............................................................................. 2

*Key v. Viera,*
     No. 01-07-00587-CV, 2009 WL 350602 (Tex. App.—
     Houston [1st Dist.] Feb. 12, 2009, no pet.) ............................. 22

*Kobleur v. Group Hospitalization & Med. Servs.,*
     954 F.2d 705 (11th Cir. 1992).......................................... 33, 34, 35

*Kollmeyer v. Aetna Life Ins. Co. (In re Heritage Sw. Med.
     Group, P.A.,*
     423 B.R. 809 (N.D. Tex. 2010).......................... iii, 8, 16, 24, 28,
                                                                          29, 31, 35, 36

*Koon v. United States,*
     518 U.S. 81 (1996) ....................................................................... 3

HOU:3014951.6

*Larson v. Scott*,
    157 F.3d 1030 (5th Cir. 1998).................................................................. 15

*Link v. Wabash R.R. Co.*,
    370 U.S. 626 (1962) ................................................................................. 15

*Maughan v. Employees Ret. Sys. of Tex.*,
    No. 03-07-00604-CV, 2008 WL 2938867 (Tex. App.—
    Austin Aug. 1, 2008, no pet.) (mem. op.) ............................................... 16

*Mire v. Full Spectrum Lending Inc.*,
    389 F.3d 163 (5th Cir. 2004)................................................................... 17

*Ogbolu v. Colgate-Palmolive Co.*,
    No. 05-06-01480-CV, 2008 WL 171228 (Tex. App.—
    Dallas Jan. 22, 2008, no pet.) (mem. op.) .............................................. 18

*Penrod Drilling Corp. v. Williams*,
    868 S.W.2d 294 (Tex. 1993) ................................................................... 23

*In re Reichmann Petroleum Corp.*,
    Civil Nos. CC-08-96, 08-97, 08-98, 08-99, 08-120, 08-149,
    08-150, 08-331, 08-332, 08-334, 09-13 and 09-14, 2009
    U.S. Dist. LEXIS 30983 (S.D. Tex. Mar. 31, 2009) ............................... 29

*RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*,
    395 F.3d 555 (5th Cir. 2004).................................................................. 12

*Rhines v. Weber*,
    544 U.S. 269 (2005)................................................................................ 18

*Smith v. I.R.S.*,
    No. 2:03-CV-01299-KJD-PAL, 2006 U.S. Dist. LEXIS
    71013 (D.C. Nev., Sept. 27, 2006), *rev'd on other grounds*
    225 F. App'x 420, 2007 U.S. App. LEXIS 17368 (9th Cir.,
    July 16, 2007) ......................................................................................... 30

*Sono Tech Enters., Inc. v. New Orleans Reg'l Physician Hosp.*,
    No. Civ. A. 04-2024, 2005 WL 885097 (E.D. La. Mar. 3,
    2005) ................................................................................................. 12, 13

HOU:3014951.6

*Sullivan v. Hudson,*
490 U.S. 877 (1989) ................................................................. 15

*Summit Coffee Co. v. Herby's Foods, Inc. ( In re Herby's Foods, Inc.),*
2 F.3d 128 (5th Cir. 1993) ........................................................ 3

*TON Servs., Inc. v. Qwest Corp.,*
493 F.3d 1225 (10th Cir. 2007) ............................................... 19

*Transitional Hosps. Corp. of La., Inc. v. La. Health Serv. & Indem. Co.,*
No. Civ. A. 05-2221, 2005 WL 2037553 (E.D. La. Aug. 16, 2005) ...................................................................... 26

*United States ex rel. Barksdale v. Blackburn,*
610 F.2d 253 (5th Cir. 1980) .......................................... 23, 27

*United States v. Land,*
213 F.3d 830 (5th Cir. 2000) ................................................ 29

*Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.,*
No. Civ. A. 97-3496 (WGB), 2006 WL 166491 (D.N.J. Jan. 23, 2006) ...................................................................... 20

*Webb v. Reserve Life Ins. Co. ( In re Webb ),*
954 F.2d 1102 (5th Cir. 1992) ................................................. 2

*WMC Mortgage Corp. v. Starkey,*
200 S.W.3d 749 (Tex. App.—Dallas 2006, pet. denied) ......... 16

## STATUTES

5 U.S.C. §§ 8901-8914 .............................................................. 34

28 U.S.C. § 158(a)(1) .................................................................. 1

28 U.S.C. § 1412 ......................................................................... 6

## RULES

FED. R. BANKR. P. 7041 ............................................................ 15

HOU:3014951.6

FED. R. CIV. P. 41(b) ............................................................................... 15

HOU:3014951.6

## I.   JURISDICTIONAL STATEMENT

This appeal arises from the Bankruptcy Court's Memorandum Opinion and Order (the "2010 Order") granting Providers' Motion to Reopen Administratively Closed Adversary Proceedings and Reurged Motion for Abstention and Remand (the "Motion").   Under 28 U.S.C. § 158(a)(1), this Court has jurisdiction to hear appeals "from final judgments, orders, and decrees" of the Bankruptcy Court.

## II.   STATEMENT OF ISSUES

The issues presented on appeal are as follows:

A.   Did the Bankruptcy Court err, as a matter of law, when it determined, in the 2010 Order, that administratively closed proceedings do not raise issues of statutes of limitations, plaintiffs' diligence in prosecuting their claims, or equitable tolling?

B.   Did the Bankruptcy Court err, as a matter of law, when it determined, in the 2010 Order, that Providers did not sleep on their rights because the Fifth Circuit's *RenCare* decision in 2004 merely "chipped away" at the doctrine of exhaustion of administrative remedies in Medicare Part C cases, while the "most significant decision," by a Texas state court, was not handed down until late 2007?

C.   Did the Bankruptcy Court err, as a matter of law, when it determined, in the 2010 Order, that Aetna did not allege any specific facts to establish prejudice to Aetna should the Adversary Proceeding be reopened?

D.   Did the Bankruptcy Court err, as a matter of law, when it determined, in the 2010 Order, that Judge Felsenthal's May 20, 2004 Order "did not place any time restrictions" on Providers' exhaustion of remedies and that it would be "manifestly inequitable" to hold that a deadline did, in fact, exist by virtue of Judge Felsenthal's 2004 Order.

E.   Did the Bankruptcy Court err, as a matter of law, when it determined, in the 2010 Order, that Providers' failure to appeal Judge Felsenthal's 2004 Order has no bearing on the issue of whether dismissal of Providers' case is appropriate or whether the statute of limitations on the underlying claims has now run.

### III.   STANDARD OF REVIEW

When reviewing a bankruptcy court's decision, the district court applies the standard of review generally used in the federal court of appeals.  *See Hughes v. Neary (In re Hughes)*, 386 B.R. 624, 628 (N.D. Tex. 2008), *aff'd*, 309 F. App'x 841 (5th Cir. 2009); *see also Webb v. Reserve Life Ins. Co. ( In re Webb )*, 954 F.2d 1102, 1103-04 (5th Cir. 1992).  Matters within a bankruptcy judge's discretion are reviewed for an abuse of discretion.  *See In re Gandy*, 299 F.3d 489, 494 (5th Cir. 2002).  A bankruptcy court abuses its discretion when it "(1) applies an improper legal standard . . . , or (2) rests its decision on findings of fact that are clearly erroneous."  *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005).

In conducting an abuse of discretion analysis, the district court subjects findings of fact to the clear error standard of review.  Such findings are reversible "if, based on the entire evidence, the reviewing court is left 'with the definite and firm conviction that a mistake has been made.' "  *Hughes*, 386 B.R. at 628 (quoting *In re Allison*, 960 F.2d 481, 483 (5th Cir. 1992)).  Matters of law are reviewed *de novo*, requiring the district court to "make a judgment independent of the bankruptcy court's, without deference to that

court's analysis and conclusions." *England v. FDIC (In re England)*, 141 B.R. 495, 497 (N.D. Tex. 1991), *aff'd*, 975 F.2d 1168 (5th Cir. 1992); *see also Summit Coffee Co. v. Herby's Foods, Inc. ( In re Herby's Foods, Inc.)*, 2 F.3d 128, 131 (5th Cir. 1993).

Whether the bankruptcy court applied the correct legal standard is a question of law subject to *de novo* review.  *See Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 409 (5th Cir. 2004).   Hence, the abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.  *See Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 205 (5th Cir. 1999) (*quoting Koon v. United States*, 518 U.S. 81, 100 (1996)).

## IV.   INTRODUCTION AND SUMMARY

The Bankruptcy Court properly framed the underlying question, when it asked Providers' counsel during oral argument:  "So, where've you been?"[1] Unfortunately, the import of the Providers' response appears to have been lost on the court.  As Providers' counsel unabashedly stated, the Providers have spent the past five years waiting for the dust to settle on Texas law and for a final decision to be issued in a separate suit against a different company

---

[1] 3R534 (p. 5, line 18).

HOU:3014951.6

in an Austin, Texas state court.[2]  Only then, the Providers said, could they assess whether it would be worth their while to, presumptively, resurrect their claims against Aetna in state court.  "In other words, until the trial judge in Austin makes that decision, there's not a whole lot of incentive to go do a whole bunch of work."[3]

The indifference the Providers have shown to the Bankruptcy Court's May 20, 2004 Order – which required them to exhaust their Medicare remedies during the administrative closure of this case – is telling.  The Providers do not dispute the fact that they made **absolutely no effort** to comply with the 2004 Order, because they had no "incentive" to do so.  In effect, the Providers ignored a valid and enforceable court order.

The Bankruptcy Court's February 9, 2010 ruling in this case merely reinforces the cavalier attitude shown by the Providers and, more troublingly, creates an unworkable and irrational standard for when, if ever, a party can be held to task for flouting its obligations under a stay or administrative closure order involving exhaustion of remedies.

Under the standard applied by the Bankruptcy Court, no exhaustion-of-remedies order could ever be enforced against a recalcitrant party absent a

---

[2] 3R535 (p. 6, lines 21-25) (describing the Providers' similar Medicare benefit claims against PacifiCare, which "didn't remove us to Federal Court and tie us up in bankruptcy").

[3] 3R535-537 (p. 6, line 21 – p. 8, line 5).

date-specific deadline for compliance – a certainty that most exhaustion procedures do not allow, and would be impractical in any event. Indeed, under the Bankruptcy Court's reasoning, the Providers could have preserved their claims, and reopened their adversary proceeding against Aetna (the "Adversary Proceeding"), no matter how much time had lapsed, without repercussion.

In reaching this unsettling result, the Bankruptcy Court relied on legal conclusions that were erroneous, and on factual conclusions not supported by the record. Accordingly, for the reasons set forth in this brief, the Bankruptcy Court's 2010 Order should be reversed.

## V. STATEMENT OF THE CASE

### A. Nature Of The Case

This dispute arises from the Bankruptcy Court's 2010 Order granting Providers' August 31, 2009 motion to reopen the Adversary Proceeding against Aetna. The Adversary Proceeding was administratively closed by the Bankruptcy Court on May 20, 2004 (the "2004 Order") for the sole purpose of requiring the Providers to exhaust their Medicare administrative remedies. The Providers admittedly made no attempt to exhaust their administrative remedies either before or after the Adversary Proceeding was administratively closed.

HOU:3014951.6

**B.     Course Of Proceedings**

On January 5, 2001, an involuntary petition was filed in the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division, against Heritage Southwest Medical Group, P.A. ("Heritage" or "Debtor"), a third-party administrator of Medicare benefits to NYLCare 65 enrollees.[4]   On November 1, 2001, the Bankruptcy Court entered an order for relief under chapter 7 of the Bankruptcy Code.[5]

On October 3, 2003, the Providers filed their First Amended Original Petition against Aetna in the 345th Judicial District Court of Travis County, Texas (the "State Court Action").[6]   On October 16, 2003, Aetna timely removed the State Court Action to the United States Bankruptcy Court for the Western District of Texas (Austin Division).[7]   At the same time, Aetna filed a motion to transfer venue, pursuant to 28 U.S.C. § 1412, to the Bankruptcy Court, where the Heritage chapter 7 proceedings were pending. Aetna's motion to transfer was based on the grounds that the Providers' claims constituted proceedings that were "core" to the Heritage bankruptcy (*i.e.*, reimbursement for medical services allegedly rendered to NYLCare 65

---

[4]   2R96 at ¶ 2.

[5]   2R96 at ¶ 2.

[6]   2R65.

[7]   2R96 at ¶ 3.

HOU:3014951.6

enrollees).[8]  The transfer motion was granted by the U.S. Bankruptcy Court for the Western District of Texas on December 3, 2003.[9]

On January 26, 2004, Aetna moved to dismiss Providers' Adversary Proceeding on the grounds that the Providers' claims sought reimbursement for Medicare benefits, thus requiring the Providers to first exhaust their administrative remedies under Medicare Part C.[10]  On May 20, 2004, after briefing and oral argument, the Bankruptcy Court issued a Memorandum Opinion ordering the proceedings administratively closed pending Providers' exhaustion of their Medicare administrative remedies.[11]

After more than five (5) years of no activity and no administrative exhaustion proceedings, the Providers moved to reopen the Adversary Proceeding on August 31, 2009, and reurged their motion for abstention and remand of their case to Travis County district court.  The basis for the requested relief was that exhaustion of Medicare remedies was not required

---

[8]   2R92.

[9]   2R92.

[10]   2R94.

[11]   2R237.

or even possible.[12]  On February 9, 2010, the Bankruptcy Court issued the 2010 Order granting Providers' motion.[13]  This appeal followed.

## VI.  STATEMENT OF FACTS

### A.  Origin Of Dispute: Providers Seek Medicare Benefit Payments

In the early 1990s, NYLCare Health Plans, Inc. ("NYLCare") (now Aetna) established a Medicare + Choice ("M+C") health care plan ("NYLCare 65 Plan").  Under a contract with the Health Care Financing Administration ("HCFA") (now Centers for Medicare and Medicaid Services), NYLCare received funds from HCFA for Medicare benefits to eligible insureds.[14]

NYLCare contracted with the Debtor for it to process claims and pay the Providers.[15]  From the funds it received from HCFA, NYLCare made monthly capitation payments to the Debtor, which were specifically designated for paying covered claims for health care services rendered by medical providers to NYLCare 65 members.[16]

---

[12]  2R264.

[13]  *Kollmeyer v. Aetna Life Ins. Co. (In re Heritage Sw. Med. Group, P.A.*), 423 B.R. 809, 815-16 (N.D. Tex. 2010) ("Kollmeyer").

[14]  2R242.

[15]  2R242.   NYLCare and the Debtor entered into an Administrative Services Agreement ("ASA") and an IPA Services Agreement (the "IPA Agreement"), which became effective on June 1, 1993 and April 1, 1994, respectively.  2R96 at ¶ 4.  The original IPA Agreement and ASA were made between the Debtor and Sanus Texas Health Plan, Inc. ("Sanus"), subsequently known as NYLCare.  2R96-97 at ¶ 4 n.4.

[16]  2R242-243; 2R97 at ¶ 5.

Pursuant to its agreements with NYLCare, the Debtor was required to contract separately with and pay medical providers (including the Providers) for covered services rendered to NYLCare 65 enrollees.[17]  In particular, the Debtor agreed to be responsible for directly paying physicians and institutional providers (including the Providers) for covered services rendered to NYLCare 65 members.[18]  The Debtor was also required to pay any covered claims that exceeded NYLCare's monthly capitation to the extent necessary to ensure medical care without interruption.[19]

Aetna was not a party to the contracts between the Debtor and the medical providers, and Aetna did not participate in negotiating or drafting these contracts.[20]  The Providers have no contractual privity with either NYLCare or Aetna.[21]  Pursuant to its agreements with the Debtor, NYLCare properly made all capitation payments to the Debtor.[22]  Despite this, the Debtor failed to pay the Providers for certain covered services rendered to NYLCare 65 enrollees.[23]

---

[17]  2R97 at ¶ 5.

[18]  2R97 at ¶ 4.

[19]  2R97 at ¶ 5.

[20]  2R98 at ¶ 6.

[21]  2R101 at ¶ 15.

[22]  2R98 at ¶ 7.

[23]  2R243; 2R97 at ¶ 7.

-9-

On January 5, 2001, an involuntary petition was filed against the Debtor, and eleven months later an order for relief under chapter 7 of the Bankruptcy Code was entered.[24]  Aetna filed a proof of claim in the chapter 7 proceeding relating to the capitation payments it made to the Debtor.[25]

## B.   Providers' Belated Effort To Recover Medicare Benefit Payments

The Providers filed suit against Aetna in late 2003, nearly two years after the chapter 7 order for relief was entered against the Debtor (the principal Medicare intermediary responsible for paying the providers' alleged claims).[26]

The Providers asserted eight causes of action against Aetna, all arising out of the Medicare intermediary's alleged failure to pay claims related to medical services provided in 2001-2002.[27]  The Providers' suit also sought a declaration that Aetna was liable under Texas law even if it made its capitation payments to the Debtor.[28]  None of the Providers exhausted their

---

[24]   2R96 at ¶ 2.

[25]   2R249.

[26]   2R65; 2R238.

[27]   2R69-73; 2R238.  As summarized in the Bankruptcy Court's May 2004 decision to administratively close Providers' Adversary Proceeding: "the [P]roviders . . . allege claims for (1) violation of Texas Insurance Code art. 21.55; (2) violation of Texas Insurance Code art. 20A.09(2); (3) negligence per se and at common law; (4) negligent misrepresentation; (5) common law fraud; (6) violation of the Texas Theft Liability Act; (7) violation of Texas Insurance Code art. 21.21 §§ 4 and 16 and of the Texas Business and Commerce Code § 17.46(b) regarding false statements that claims would be paid; (8) violation of Texas Insurance Code art. 21.07-6, § 12(a)." 2R238.

[28]   2R73; 2R238.

Medicare administrative remedies before bringing their suit against Aetna.[29]
The Trustee in the Heritage chapter 7 proceeding asserted similar claims
against Aetna and was also represented by Providers' counsel.[30]

## C.    Administrative Closure Of Providers' Adversary Proceeding

On January 26, 2004, Aetna moved to dismiss Providers' Adversary
Proceeding for lack of subject matter jurisdiction.[31]   Aetna contended that,
although the Providers had asserted several state law claims, "at bottom,
they seek reimbursement for Medicare benefits provided to Medicare +
Choice enrollees" and that, under then-controlling authority, the Providers'
claims were thus subject to the Medicare Act's mandatory requirement that
claimants exhaust their administrative remedies before filing suit.[32]

After conducting a hearing on Aetna's motion on March 12, 2004, the
Bankruptcy Court issued a Memorandum Opinion and Order on May 20,
2004, in which Chief Judge Felsenthal noted:

> Aetna argues that the trustee and the providers must
> exhaust their administrative remedies before they
> may file suit against Aetna. . . . Aetna cites two
> district court decisions to support its position. *Foley
> v. Southwest Texas HMO, Inc.*, 226 F. Supp. 2d 886
> (E.D. Tex. 2002), and *Lifecare Hosps., Inc. v. Ochsner*

---

[29]   3R534-538, 2R95-96, 2R292-293.

[30]   2R238.

[31]   2R94.

[32]   2R95 at ¶ 1.

-11-

> *Health Plan, Inc.*, 139 F. Supp. 2d 768 (W.D. La. 2001).  The trustee and the providers contend that the district courts erroneously decided the cases. They ask this court to disregard those decisions.  This court declines the invitation to declare that two district courts in the Fifth Circuit erred.  The court defers to the Fifth Circuit to opine on the correctness of those decisions.[33]

Accordingly, Judge Felsenthal held that "the trustee and the providers must exhaust their administrative remedies. . . . Based on the foregoing, . . . the adversary proceedings are ADMINISTRATIVELY CLOSED pending exhaustion of administrative remedies."[34]

## D.   The Post-Closing Decisions And Settlement With The Trustee

On December 30, 2004 – just seven months after the Bankruptcy Court's 2004 Order – the Fifth Circuit issued its decision in *RenCare*, holding that exhaustion of administrative remedies was not required in order for the provider (RenCare) to assert claims against its government-contracted insurer (Humana) for benefit payments under Medicare's M+C Program.[35]

Three months later, on March 3, 2005, the *Sono Tech* decision was issued by the U.S. District Court for the Eastern District of Louisiana.[36]

---

[33]   2R239, 2R244.

[34]   2R249-250.

[35]   *RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*, 395 F.3d 555, 558 (5th Cir. 2004).

[36]   *Sono Tech Enters., Inc. v. New Orleans Reg'l Physician Hosp.*, No. Civ. A. 04-2024, 2005 WL 885097, at *1 (E.D. La. Mar. 3, 2005).

-12-

Citing the Fifth Circuit's newly issued *Rencare* decision, the court in *Sono Tech* reversed, on rehearing, its denial of plaintiff's motion to remand its M+C benefit payment claims to state court.[37]   The one-page *Sono Tech* decision stated that the *RenCare* decision "forecloses any argument by Defendants that Plaintiff's claims arise under the Medicare Act."[38]

Prior to the decisions, Aetna and the Trustee settled their respective claims against each other in the Heritage chapter 7 case and related adversary proceeding, which settlement was approved by the Bankruptcy Court on November 4, 2004.[39]

## E.   Providers' Motion To Reopen Administratively Closed Case

Following the Bankruptcy Court's 2004 Order – which **directed** the Providers to exhaust their administrative remedies – the Providers took no action to avail themselves of any administrative remedies under Medicare. Nor, by their own admission, did they take any legal action after concluding **as early as December 2004** that decisions by the Fifth Circuit and other courts had "conclusively" held that exhaustion of Medicare remedies was "not

---

[37]   *Sono Tech*, 2005 WL 885097, at *1.

[38]   *Sono Tech*, 2005 WL 885097, at *1.

[39]   3R615-630, 3R631-632.

-13-

required."[40]   Instead, the Providers did nothing, allowing the Bankruptcy Court proceeding to remain fallow for more than five years.[41]

Then, on August 31, 2009 – nearly five years after the Fifth Circuit's *RenCare* decision was handed down, and more than five years after the Bankruptcy Court directed the Providers to exhaust – the Providers moved to reopen the administratively closed Adversary Proceeding and reurged their motion for abstention and remand.[42]   The Providers based their motion to reopen solely on the contention that "the law on Medicare Part C exhaustion of remedies changed unequivocally in the Providers' favor," citing *RenCare* as being "dispositive of this case" and rendering the two prior district court opinions (on which Aetna had relied) "no longer the law."[43]

On February 9, 2010, the Bankruptcy Court issued the 2010 Order granting Providers' Motion.

---

[40]   2R264.

[41]   3R534-537 (p. 5, line 15 – p. 8, line 5).

[42]   2R262.

[43]   2R264-265, 2R267.

HOU:3014951.6

## VII.   ARGUMENT AND AUTHORITIES

**A.   The Bankruptcy Court Erred In Determining That Administratively Closed Proceedings Do Not Raise Issues Of Statutes Of Limitations, Plaintiffs' Diligence In Prosecuting Their Claims, Or Equitable Tolling**

The Bankruptcy Court's decision elevates form over substance to the point of disregarding the statutory authority inherent in every federal court to enforce compliance with its rules and orders, namely:

> If the plaintiff *fails to prosecute **or to comply*** with *these rules **or a court order***, a defendant may move to [or the court may *sua sponte*] dismiss the action or any claim . . . .[44]

This principle applies with equal force here, where the Bankruptcy Court administratively closed the Adversary Proceeding pending Providers' compliance with the court's order that administrative remedies be exhausted. *See Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 715 (5th Cir. 2002) ("district court retains jurisdiction to supervise compliance with the order"); *see also Sullivan v. Hudson*, 490 U.S. 877, 878 (1989) (a remanding court continues to retain "jurisdiction of that action," and "may exercise that jurisdiction to determine if its legal instructions on remand have been followed") (citation omitted).

---

[44]   FED. R. CIV. P. 41(b) (emphasis added).  This rule is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7041. *See infra* VII.A. at p. 18.   *See Larson v. Scott*, 157 F.3d 1030, 1031 (5th Cir. 1998) (citing FED. R. CIV. P. 41(b)); *Boudwin v. Graystone Ins. Co.*, 756 F.2d 399, 401 (5th Cir. 1985) ("This authority flows from the court's inherent power to control its docket and prevent undue delays in the disposition of pending cases") (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629 (1962)).

Instead, the Bankruptcy Court's 2010 Order seizes on snippets from the *American Heritage* decision as support for the thesis that an administratively closed case is no longer "active" and "is likely to remain dormant for an appreciable period of time,"[45] as if that somehow exonerates the Providers' five years of inaction and failure to comply with the 2004 Order.  It does not. What *American Heritage* confirms, and what the Bankruptcy Court failed to grasp, is that the 2004 Order's mere administrative closure of the case did not free the Providers from their affirmative obligation to exhaust their Medicare remedies, and that the court maintained its inherent authority to insure that the Providers complied with that mandate.

In the same vein, the Bankruptcy Court refused to give any credence to Aetna's failure-to-prosecute cases, saying they "all involve cases languishing on a court's active docket."[46]  That, too, misses the point.  The purpose of the 2004 Order was to require the Providers' compliance with Medicare's exhaustion of remedies requirement.  The fact that the Providers utterly failed to pursue these exhaustion remedies implicates the same failure-to-prosecute factors deemed important in Aetna's cases.  The Providers' failure

---

[45]  *See Kollmeyer*, 423 B.R. at 813.

[46]  *Id*.  *See WMC Mortgage Corp. v. Starkey*, 200 S.W.3d 749, 752-53 (Tex. App.—Dallas 2006, pet. denied) (no "significant actions taken" by plaintiff in two years warranted dismissal of the case for "want of prosecution");  *Maughan v. Employees Ret. Sys. of Tex.*, No. 03-07-00604-CV, 2008 WL 2938867, at *1 (Tex. App.—Austin Aug. 1, 2008, no pet.) (mem. op.) (allowing more than twelve months to pass without any activity constituted failure to diligently prosecute plaintiff's suit).

-16-

to "prosecute" their exhaustion remedies for five years clearly warrants dismissal of their claims under the diligence standards applied in those cases.

This view is further supported by the Fifth Circuit's decision in *Mire v. Full Spectrum Lending Inc.*, the very case cited by the Bankruptcy Court's 2010 Order in describing the 2004 Order's administrative closure as a mere "procedural device" that rendered the matter inactive.[47]  As the Fifth Circuit explained in *Mire*:

> District courts frequently make use of this device to remove from their pending cases suits which are ***temporarily active elsewhere*** (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending).[48]

As envisioned by the Fifth Circuit, the 2004 Order's administrative closure contemplated that ***action*** would be taken elsewhere (*i.e.*, the exhaustion of the Providers' administrative remedies before the appropriate Medicare body) and that this process would be temporary, not open-ended.

Applicable case law demonstrates that administratively closing a case, even without prejudice to reopen, does not constitute an open-ended stay of the proceedings.  A plaintiff still must act with due diligence to pursue his cause of action.  An administrative closing can toll the statute of limitations.  However, it does so only until the administrative remedy is exhausted, at

---

[47]   *Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163 (5th Cir. 2004).

[48]   *Mire*, 389 F.3d at 167.

-17-

which time the statute of limitations begins to run again if a plaintiff is not diligent in pursuing the case.  Applying these standards here results in the Providers' claims against Aetna being time-barred.

Aetna acknowledges that the Bankruptcy Court's administrative closure of these proceedings in 2004 neither dismissed the Providers' claims nor terminated the case.   In the same vein, however, the 2004 Order most certainly did not indefinitely stay all proceedings or relieve the Providers from having to exhaust their administrative remedies or otherwise diligently prosecute their alleged causes of action.  Indeed, the 2004 Order makes no express mention of a stay of any kind, nor did the Providers request that a stay be entered or that the limitations period be tolled despite acknowledging "statute of limitations issues" with their causes of action.[49]

Even where a court determines that a stay pending exhaustion of remedies is appropriate, the U.S. Supreme Court has made clear that the court "should place reasonable time limits" on the plaintiff's pursuit of those remedies.  *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005); *see also, e.g., Ogbolu v. Colgate-Palmolive Co.*, No. 05-06-01480-CV, 2008 WL 171228, at *2 (Tex. App.—Dallas Jan. 22, 2008, no pet.) (mem. op.) (noting, in the context of a dismissal without prejudice, that "the trial court's order . . . contained no

---

[49]    3R477-478 (p. 40, line 10 – p. 41, line 5).

HOU:3014951.6

suggestion that appellant could wait any length of time, much less almost two years," to reopen his case).

Absent an order expressly staying all proceedings, several courts have held, and others have suggested, that the mere administrative closing of a case does not indefinitely toll the limitations period.  See *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1244 (10th Cir. 2007) ("neither party has called the court's attention to any such tolling provision or related case law, nor has the court located any on its own").   Although there appear to be no Texas cases addressing this issue, a New Jersey federal court considered whether a statute of limitations should be tolled when a case is administratively terminated.  Holding that the limitations period was not tolled, the district court explained:

> Administrative termination is a procedural device that allows a district court judge to get an inactive case (for example, a case stalled by bankruptcy) off the list of pending cases.
>
> \*   \*   \*
>
> Nothing prevented [plaintiff] from moving to return the case to the active docket for the limited purpose of asserting a claim against a non-party in order to prevent the statute from running . . . .  A plaintiff is not entitled to equitable tolling where the plaintiff has not been diligent.  A stay of discovery does not automatically toll the statute of limitations.  The Court does not see why an administrative dismissal should.
>
> \*   \*   \*

-19-

> When it comes to seeking relief from statutes of limitations, victory goes to the diligent, not the dilatory.

*Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, No. Civ. A. 97-3496 (WGB), 2006 WL 166491, at **5-7 (D.N.J. Jan. 23, 2006) (internal citation omitted).

The Bankruptcy Court attempted to distinguish *Walsh* on the ground that the court's statute of limitations ruling involved a post-closure claim against a new party. For purposes of *Walsh's* equitable tolling analysis, however, that is a distinction without a difference. The issue in *Walsh* was whether the ***plaintiff was diligent*** in fulfilling its obligation, under the court's administrative closure order, to reopen the proceedings in the event there "was a change warranting it."[50] Noting that the plaintiff in *Walsh* had ample opportunity to file an appropriate motion with the court during the four years the case was administratively closed, the court determined that the plaintiff's lack of diligence was fatal. Such should be the result here, where the 2004 Order made clear that the Bankruptcy Court would "revisit" its ruling if it were determined "that the administrative process does not apply to . . . the providers' claims."[51] By the Providers' own admission, that determination was made by the 2004 *RenCare* decision, and the Providers'

---

[50]   *Walsh*, 2006 WL 166491, at *6.

[51]   2R249.

failure to timely reopen the Adversary Proceedings warrants dismissal of their claims under *Walsh*.

At a minimum, to the extent administratively closing a case might toll the statute of limitations (where failure to exhaust administrative remedies is at issue), it does so only until the administrative remedy is exhausted, at which time the statute of limitations begins to run again. *Baglione v. Clara Maass Med. Ctr., Inc.*, Civil Action No. 99-4069 (KSH), 2006 WL 2591119, at *6 (D.N.J. Sept. 8, 2006) ("statute of limitations began to run again" once "the plan appeals were exhausted").

Here, the Providers took no action to avail themselves of any administrative remedies under Medicare after the closure of these proceedings.  Nor, by their own admission, did they take any action after concluding as early as December 2004 that decisions by the Fifth Circuit and other courts had "conclusively" held that exhaustion of Medicare remedies was "not required."

Even if the statute of limitations were tolled during the period after the Adversary Proceeding was administratively closed, the Providers' failure to act caused the limitations period to run again beginning in 2005.  By that measure, the Providers' claims based on the Texas Insurance Code and common law negligence, negligence per se, and negligent misrepresentation

-21-

(which are subject to two-year statutes of limitation) expired in April 2006.[52] As no claim asserted by the Providers has a limitations period longer than four years, every cause of action asserted by the Providers became time-barred by at least April 2008 – nearly a year and a half before the Providers moved to reopen these proceedings.[53]

Where, as here, the Court administratively closed these proceedings for the sole purpose of affording the Providers the opportunity to exhaust their administrative remedies – or determine that no such relief was available – the Providers slept on their alleged rights for nearly five years at their own peril.

Under the Fifth Circuit's standard for dismissing actions for want of prosecution, a delay of such magnitude – nearly five years without making even a perfunctory motion to reopen these proceedings – is beyond mere negligence or inadvertence.  Even under a liberal reading of the case law and the Court's 2004 Order, most of the Providers' causes of action became time-

---

[52]   *See Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 622-23 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (all actions under article 21.21 of the Texas Insurance Code must be commenced within two years); *Ericsson, Inc. v. St. Paul Fire & Marine Ins. Co.*, 423 F. Supp. 2d 587, 590-91 (N.D. Tex. 2006) (two-year statute of limitations applies to article 21.55 claims under the Texas Insurance Code); *Exxon Corp. v. Emerald Oil & Gas Co.*, ___ S.W.3d ___, No. 05-1076, 2009 WL 795668, at *3 (Tex. Mar. 27, 2009) (two-year statute of limitations applies to claims for common law negligence, negligence per se and negligent misrepresentation).

[53]   *See Key v. Viera*, No. 01-07-00587-CV, 2009 WL 350602, at *4 (Tex. App.—Houston [1st Dist.] Feb. 12, 2009, no pet.) (fraud and four-year statute of limitations for every action for which there is no express limitations period).

barred in 2006, with the other statutes of limitations running in April of 2008, at the latest.  The Providers should not be allowed to resurrect these causes of action on a motion they could have filed, by their own admission, nearly five years ago.

**B.    The Bankruptcy Court Erred In Determining That Providers Did Not Sleep On Their Rights Because The Fifth Circuit's *Rencare* Decision In 2004 Merely "Chipped Away" At The Doctrine Of Medicare Exhaustion And That The "Most Significant Decision" Was Not Handed Down Until Late 2007 By A Texas State Court**

The Providers' principal excuse for their inexcusable five-year delay rests on the notion that the Texas Supreme Court's 2007 *Christus*[54] decision, and not the Fifth Circuit's 2005 *RenCare* opinion, holds sway on interpreting Medicare's exhaustion requirements.    While that may be true if the Providers' claims had been languishing in a Texas state court,[55] it certainly is not the case here.  *See United States ex rel. Barksdale v. Blackburn*, 610 F.2d 253, 259-60 (5th Cir. 1980) (no deference given by federal courts to state court decisions on federal law); *Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 824 F. Supp. 689, 710 (S.D. Tex. 1993) ("This Court is absolutely bound to follow the pronouncements of the Fifth Circuit and the Supreme Court as to what is, and what is not, federal law.").

---

[54] *Christus Health Gulf Coast v. Aetna, Inc.*, 237 S.W.3d 338 (Tex. 2007) ("*Christus*").

[55] *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) ("While **Texas courts** may certainly draw upon the precedents of the Fifth Circuit . . . in determining the appropriate federal rule of decision, they are obligated to follow only higher Texas courts and the United States Supreme Court.") (emphasis added).

By holding that *RenCare's* exhaustion ruling triggered no obligation on the Providers to take remedial action, the Bankruptcy Court erred.   The Bankruptcy Court's acceptance of the Providers' contention that *RenCare* merely "chipped away" at the doctrine of Medicare exhaustion,[56] not only gives short shrift to the Fifth Circuit's primacy on matters of federal law, it also improperly rewards the Providers for sitting idle for the first three years of a five-year delay.

The sole impetus of the 2004 Order was the Bankruptcy Court's determination that "the providers must exhaust" their Medicare administrative remedies, and that administratively closing the case was warranted to allow the Providers to do just that.[57]   That 2004 Order – issued by a federal bankruptcy court relying on two federal district court decisions construing the federal Medicare statute – was in no way contingent upon what the Texas Supreme Court thought of the matter.   To the contrary, in its 2004 Order, the Bankruptcy Court made it patently clear that any future review of whether Medicare exhaustion was required would need to come from the Fifth Circuit itself:

> The trustee and the providers contend that the district courts erroneously decided the cases [on which Aetna relies].   They ask this court to disregard

---

[56]   *See Kollmeyer*, 423 B.R. at 813.

[57]   2R249.

> those decisions.  This court declines the invitation to declare that two district courts in the Fifth Circuit erred.  The court defers to the Fifth Circuit to opine on the correctness of those decisions.[58]

According to the Providers, that is precisely what the Fifth Circuit did in *RenCare,* only a few months after the Bankruptcy Court administratively closed the Adversary Proceeding in 2004.  Indeed, when the Providers finally moved to reopen the Adversary Proceeding more than five years later, the words in their initial motion were unguarded.  The Fifth Circuit's *RenCare* decision, they touted, "addressed the precise question presented" on which the Bankruptcy Court's 2004 administrative closure was premised, and "[w]ithout question, *RenCare* is dispositive of this case," having made the two federal district court opinions (on which Aetna relied in 2004) "no longer the law."[59]  The *RenCare* decision, according to the Providers' initial motion to reopen, "conclusively" changed "the law on Medicare Part C exhaustion of remedies . . . unequivocally in the Providers' favor."[60]   By their own admission, the Providers knew – and believed – in 2004 that the premise upon which the Bankruptcy Court's 2004 Order was based was no longer good law.  Yet, the Providers took no action.

---

[58]  2R244.

[59]  2R265-267.

[60]  2R264.

Only after Aetna challenged the Providers' unwarranted five-year delay in moving to reopen, did the Providers' assessment of *RenCare's* significance became more circumspect.  At oral argument in the Bankruptcy Court, the Providers sought to shift the spotlight to the Texas Supreme Court's later holding in *Christus*, and even represented to the court that no action was required on their part until the question of federal Medicare preemption was "resolved" – which the Providers contend required a Texas Court of Appeals to weigh in on the issue in 2009.[61]

These proffered excuses for the Providers' abject failure to act, which the Bankruptcy Court accepted *in toto*, are simply a smokescreen, lacking any support in the law or the facts of this case.  The true fact, as evidenced by the Providers' representations at oral argument on January 25, 2010, is that the Providers were focused solely on other state law claims in other state court cases, and there was "not a lot of incentive to go do a whole bunch of work" in this case.[62]  The Providers were more interested in planning their legal strategy for their presumptive future state court action against Aetna

---

[61]   3R534 (p. 6, lines 13-20); 2R269-270, citing *Edwards v. Blue Cross Blue Shield of Tex.*, 273 S.W.3d 461 (Tex. App.—Dallas 2008, pet. denied), *cert. denied*, 130 S. Ct. 1053 (2010).  Even if the "pre-emption" issue had any bearing on Providers' obligations under the May 20, 2004 closure Order, which it did not, a federal district court resolved that same question, based on *RenCare*, four years earlier.  *See Transitional Hosps. Corp. of La., Inc. v. La. Health Serv. & Indem. Co.*, No. Civ. A. 05-2221, 2005 WL 2037553, at *1 n.2 (E.D. La. Aug. 16, 2005).

[62]   3R534-537 (p. 6, line 21 – p. 8, line 5).

-26-

than in addressing their existing obligations to the Bankruptcy Court in this case.  Diligence in litigation dictates that the Providers should have returned to the Bankruptcy Court immediately after *RenCare* was issued either to reinstate the Adversary Proceeding or re-urge their remand motion.

The Bankruptcy Court's decision to reopen and remand this case effectively rewards the Providers' unabashed indifference to the 2004 Order, the Fifth Circuit's *RenCare* decision, and federal courts in general.  By so doing, the Bankruptcy Court ignored the fundamental distinction between state and federal courts on matters of federal law.  As stated by the Fifth Circuit in *Blackburn*:

> Regardless of the thoroughness of state fact finding procedures, considerations of comity do not obligate federal courts . . . to defer to state determinations on matters of federal law. The obligation of the federal judge is the opposite: to apply the proper federal constitutional standards based on the underlying facts, although the conclusions drawn from the facts may differ from the state court's conclusions.[63]

By condoning the Providers' apathy to *RenCare* – a decision they say "conclusively" eliminated any exhaustion requirement – and the 2004 Order, the Bankruptcy Court failed to meet its obligation under *Blackburn*, and erred as a matter of law.  Conclusively means only one thing – the Providers had to act diligently after *Rencare* or lose the right to pursue Aetna.

---

[63]  *Blackburn*, 610 F.2d at 259.

HOU:3014951.6

**C.**   **The Bankruptcy Court Erred In Determining That Aetna Did Not Allege Any Specific Facts To Establish Prejudice Should The Adversary Proceeding Be Reopened**

Without a single word of explanation or reasoning in its 2010 Order, the Bankruptcy Court accepted, wholesale, the Providers' contention that Aetna "has not alleged any specific facts to establish prejudice to Aetna should the Adversary Proceeding be reopened."[64]   To the contrary, Aetna more than amply alleged the prejudice it suffered as a result of the Providers' failure to reopen the Adversary Proceeding for more than five years.

The prejudice to Aetna is exacerbated by the fact the Providers' putative claims arise out of allegedly unpaid medical services rendered between September 2001 and November 2002 – more than two years before the Providers' five-year delay.  As expressly alleged in Aetna's Opposition to Providers' Motion to Reopen:

> During the five years since this Court's 2004 Order, Aetna has settled with the Trustee, and the potential testimony of witnesses involved in the handling of the thousands of underlying medical claims (for services performed by hundreds of providers in 2001-2002) has grown stale.[65]

"The primary purpose of a statute of limitations is to compel the exercise of a right within a reasonable time so that the opposite party has a fair opportunity to defend while witnesses are available and the evidence is

---

[64]   *See Kollmeyer*, 423 B.R. at 813.

[65]   2R291.

fresh in their minds." *Cont'l S. Lines, Inc. v. Hilland*, 528 S.W.2d 828, 831 (Tex. 1975); accord. *United States v. Land*, 213 F.3d 830, 836 (5th Cir. 2000) ("Statutes of limitations also protect both the Court and the defendant from cases where the loss of evidence – by death or disappearance of witnesses, fading memories, or disappearance of documents – may frustrate the search for truth.").

The Providers' rebuttal to Aetna's specific assertions of prejudice – like the Bankruptcy Court's conclusory concurrence – was simply to say, in effect, "we disagree" with Aetna.[66]   That is not sufficient for purposes of this appellate review.  *See In re Equip. Lessors of Pa., Inc.*, Civil Action No. 98-4752, 1999 U.S. Dist. LEXIS 8317, at **21-22 (E.D. Pa. May 26, 1999) (requiring remand for specific factual findings so that district court can "engage in meaningful judicial review," where Bankruptcy Court failed to provide any explanation for its conclusion); *see also In re Reichmann Petroleum Corp.*, Civil Nos. CC-08-96, 08-97, 08-98, 08-99, 08-120, 08-149, 08-150, 08-331, 08-332, 08-334, 09-13 and 09-14, 2009 U.S. Dist. LEXIS 30983, at *72 (S.D. Tex. Mar. 31, 2009).  As the District Court in Nevada recently explained:

> Here, the bankruptcy court's reasoning consists of a
> single   sentence   conclusorily   stating   that   the

---

[66]   *See Kollmeyer*, 423 B.R. at 813.

> Government's position was substantially justified.
> Due to this sparse reasoning, this Court cannot
> conduct meaningful review. Accordingly, the court
> will vacate this aspect of the decision and remand so
> that the bankruptcy court may issue a ruling
> containing a reasoned explanation . . . . [67]

The Providers' complete lack of diligence has certainly prejudiced Aetna, and the Bankruptcy Court erred by utterly ignoring the unrebutted allegations of clear prejudice asserted by Aetna.

## D. The Bankruptcy Court Erred In Determining The 2004 Order "Did Not Place Any Time Restrictions" On The Providers' Exhaustion Of Remedies And That It Would Be "Manifestly Inequitable" To Hold That A Deadline Existed

When the Bankruptcy Court "administratively closed" the Adversary Proceeding more than five years ago, it did so for a single specific purpose. The 2004 Order expressly stated that the proceedings were to be "[c]losed pending exhaustion of administrative remedies."[68]   Moreover, the 2004 Order made it amply clear that if it turned out "that the administrative process does not apply . . . to the providers' claims," then "the Court would revisit

---

[67]   *Smith v. I.R.S.*, Case Nos. BK-S-91-21026-BAM, 2:03-CV-01299-KJD-PAL, 2006 U.S. Dist. LEXIS 71013, at **7-8 (D.C. Nev. Sept. 27, 2006), *rev'd on other grounds* 235 F. App'x 420, 2007 U.S. App. LEXIS 17368 (9th Cir. Jul. 16, 2007).

[68]   *In re Heritage Sw. Med. Group, P.A.*, 309 B.R. 916, 922 (Bankr. N.D. Tex. 2004).

-30-

discretionary abstention" upon a motion by the Providers to reopen the proceedings.[69]

Ignoring these operative mandates, the Bankruptcy Court held (in a footnote) that the 2004 Order imposed no "deadline" on "the Providers' exhaustion of remedies."[70]  Focusing solely on the lack of a date-certain deadline in the 2004 Order, the Bankruptcy Court lamented that "time restrictions . . . may have been beneficial," since "the Providers have engaged in some delay," but concluded that it would be "manifestly inequitable to hold that a deadline did, in fact, exist."[71]  The Bankruptcy Court's apparent reasoning, albeit scant, completely misses the mark.

The operative inquiry, which the Bankruptcy Court misdirected at Aetna, is whether one would "prefer to see the Adversary Proceeding remain in permanent limbo."[72]  That is precisely the result that would be created if the Bankruptcy Court's interpretation of the 2004 Order stands.  For no matter what action Chief Judge Felsenthal may have directed the Providers

---

[69]   *In re Heritage Sw. Med. Group, P.A.*, 309 B.R. at 922.  In that event, the Court held that "Aetna will be judicially estopped from contending that it cannot be sued on the state law claims in district court on judicial review under 42 U.S.C. § 405(h)."  *Id.* at 921.

[70]   *See Kollmeyer*, 423 B.R. at 813 n.5.

[71]   *See id.*

[72]   *See id.* at 813.  The Bankruptcy Court's suggestion that Aetna's requested relief would have resulted in a state of "limbo" makes no sense.  Dismissing Providers' claims for failure to comply with the 2004 Order would have brought a fair and final resolution to this matter.

to take in his 2004 Order, there could never be an operative deadline if the Providers, as they did here, simply ignored the instructions of the court and did absolutely nothing.

Had the Providers engaged in the Medicare administrative remedy process, the terms of the 2004 Order would have been satisfied, even if that process had dragged on for years.  Similarly, the terms of the 2004 Order would have been satisfied if the Providers had simply moved to reopen the Adversary Proceeding – or sought appeal – after admittedly concluding nearly five years ago that *RenCare* had eliminated the 2004 Order's exhaustion requirement.  The Providers made no effort to comply with either of these mandates.

The Bankruptcy Court's impractical interpretation of the 2004 Order not only rewards the Providers for their intransigence and inexcusable neglect, it also creates the very state of "permanent limbo" that the Bankruptcy Court found so unacceptable.  Under the Bankruptcy Court's reading of the 2004 Order, the Providers could have sat idly for a decade or a century, and still have resurrected their dormant claims against Aetna without worry of waiver or statute of limitations implications.  That cannot be the law.  And yet, the Bankruptcy Court's opinion would allow this untenable result.

-32-

Under general principles of federal court practice – if not the express instructions of the 2004 Order – the Providers were obligated to act with due diligence in pursuing their cause of action against Aetna.  They were to do so either by initiating the appropriate Medicare review procedures, or by timely moving to reopen the Adversary Proceeding after concluding, shortly after the 2004 Order was issued, that such procedures were "conclusively" and "unequivocally" inapplicable as a matter of law.  The fact that the Providers did neither, with apparent and undeserved immunity, warrants reversal of the Bankruptcy Court's holding.

**E.     The Bankruptcy Court Erred In Determining That Providers' Failure To Appeal The 2004 Order Has No Bearing On The Issue Of Whether Dismissal Of Providers' Case Is Appropriate Or Whether The Statute Of Limitations On The Underlying Claims Has Now Run**

To use the Providers' own words, the "unequivocal" holding in *RenCare*, "conclusively" laid to rest any doubt as to validity of the 2004 Order's exhaustion of remedies requirement.  To the extent the Providers were waiting for further legal confirmation (certainly not from the Texas Supreme Court), they easily could, and should, have appealed the 2004 Order based on the newly-issued ruling in *RenCare*.

Aetna plainly pointed out that fact to the Bankruptcy Court, in a case that is factually indistinguishable from the case at bar.  *See Kobleur v. Group Hospitalization & Med. Servs., Inc.*, 954 F.2d 705 (11th Cir. 1992) (holding

-33-

that an administrative closure is no different than dismissal of a case without prejudice).   In *Kobleur*, Judge Reavley expressly held that an appeal was available to a party who had been ordered to exhaust her administrative remedies (under FEHBA) even though the district court stated that it was "retaining jurisdiction."

In *Kobleur*, the plaintiff sued Blue Cross for the denial of insurance claims for coverage available under a federal statute, FEHBA.[73]   Blue Cross filed a motion to dismiss the suit because of the Plaintiff's failure to exhaust available administrative remedies.   The trial court dismissed the case and also advised that it was "retaining jurisdiction" while closing the case "for statistical purposes."   *Id.* at 708.   The plaintiff immediately appealed the order.   *Id.*   In rejecting Blue Cross's argument that the appellate court did not have jurisdiction to hear the appeal, Judge Reavley wrote the following:

> Although the district court in this case stated that it was "retaining jurisdiction" while "closing the case for statistical purposes," the practical effect of the court's order is to deny the Kobleurs judicial relief until they have exhausted their administrative remedies, and thus this case is no different than those we have cited.   [citing cases for the proposition that a trial court's dismissal of a case without prejudice for failure to exhaust administrative remedies is a final order for purposes of appellate jurisdiction].   We conclude that the court below entered a final order

---

[73]   5 U.S.C. §§ 8901-8914.

-34-

giving this court jurisdiction to hear the appeal under
28 U.S.C. § 1291.[74]

The Bankruptcy Court gave short shrift to Aetna's reliance on *Kobleur* – again in a footnote discussion – by positing that "either side" in this case "could have appealed Judge Felsenthal's ruling," adding that: "Neither did, however.  The Court is at a loss to see how that fact means that dismissal is now appropriate or that the statute of limitations on the underlying claims has now run."[75]

The Bankruptcy Court's statement that Aetna, in theory, could also have appealed the 2004 Order has no bearing on *Kobleur's* applicability to this case.  First, Aetna's motion was granted.  It was the Providers who had to appeal as under *Kobleur*.  Second, Aetna has not caused any delay or taken or failed to take action inconsistent with the 2004 Order.  To the contrary, it was the Providers, not Aetna, who sought reconsideration of Judge Felsenthal's 2004 Order, and it was the Providers who were tasked with exhausting the administrative remedies that they vehemently opposed.  Rather, the point to be drawn from *Kobleur* is that the Providers had the ability, immediately after *RenCare* was issued in 2004, to affirmatively rid themselves of the mandates of the 2004 Order.  The fact that they ignored

---

[74]   *Kobleur*, 954 F.2d at 708.

[75]   *See Kollmeyer*, 423 B.R. at 815 n.6.

-35-

that option is further evidence that, as the plaintiffs in this case, the Providers failed to diligently prosecute their claims, and their abject refusal to act for five years should have repercussions.

Applying the reasoning of *Kobleur* to this case makes clear that the Providers' failure to appeal this Court's exhaustion order, combined with waiting almost five years to return to this Court (which thus prejudiced Aetna), support the dismissal of the Providers' claims. After such a ruling, the Providers would still be free to seek any available appellate review of such a dismissal and pursue any other remedies that may be available in connection therewith or as a result thereof.

Only by ignoring this option could the Bankruptcy Court have come to the conclusion that "denying the [Providers'] Motion would be tantamount to depriving the Providers of an adjudication of the merits of their claims in any forum, ever."[76]  As *Kobleur* makes clear, the Bankruptcy Court's dire prediction is unfounded.  Moreover, the Providers, not Aetna, should bear the repercussions of letting their appeal rights languish for five years.

## VIII.  CONCLUSION

WHEREFORE, Appellants Aetna Life Insurance Company, Aetna Health Inc. (formerly known as Aetna U.S. Healthcare Inc. and successor-in-interest to Aetna U.S. Healthcare of North Texas Inc.), and AET Health Care

---

[76]  *See Kollmeyer*, 423 B.R. at 813.

Plan, Inc. (formerly known as Prudential Health Care Plan, Inc.) respectfully request that the Court reverse the Bankruptcy Court's Order of February 9, 2010 granting Providers' Motion to Reopen Administratively Closed Adversary Proceedings and Reurged Motion for Abstention and Remand, and grant such other and further relief to which Appellants shall show themselves justly entitled.

Respectfully submitted this 27th day of April, 2010.

HOU:3014951.6

Respectfully submitted:

ANDREWS KURTH LLP


s/ John B. Shely

John B. Shely
State Bar No. 18215300
600 Travis, Suite 4200
Houston, Texas 77002-3090
Telephone:  (713) 220-4200
Facsimile:   (713) 220-4285

Jason S. Brookner
Texas Bar No. 24033684
1717 Main Street, Suite 3700
Dallas, Texas  75201
Telephone:  (214) 659-4400
Facsimile:   (214) 659-4401

ATTORNEYS FOR APPELLANTS

-38-

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of the above and foregoing instrument have been served by electronic CM/ECF filing, on this 27th day of April, 2010, as follows:

Kevin D. McCullough
Rochelle McCullough
325 N. St. Paul, Suite 4500
Dallas, Texas 75201

J. Ken Johnson
Sylvia Davidow
Fleming & Associates, L.L.P.
1330 Post Oak Blvd., Suite 3030
Houston, Texas 77056-3019

*s/ John B. Shely*
John B. Shely