IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HERITAGE SOUTHWEST MEDICAL | § | CASE NO. 01-30212-BJH-7 |
| GROUP, P.A., | § | (CHAPTER 7) |
| | § | |
| DEBTOR, | § | |
| | § | |
| | § | |
| AETNA LIFE INSURANCE CO., | § | |
| AETNA U.S. HEALTHCARE, INC., | § | |
| ET AL. | § | |
| | § | |
| APPELLANTS, | § | |
| | § | CIVIL ACTION NO. 3:10-CV-00684-L |
| V. | § | |
| | § | |
| KENNETH KOLLMEYER, M.D., | § | |
| LAWYENCE ALTER, M.D., ET AL., | § | |
| | § | |
| APPELLEES. | § | |

On Appeal from the United States Bankruptcy Court
for the Northern District of Texas, Dallas Division
Chapter 7 Case No. 01-30212-BJH-7; Adversary No. 04-3005-BJH

## BRIEF OF APPELLEES

Kevin D. McCullough
ROCHELLE MCCULLOUGH LLP
325 N. St. Paul, Suite 4500
Dallas, TX 75201
Telephone:  (214) 953-0182
Facsimile:   (214) 953-0185

J. Ken Johnson
Sylvia Davidow
FLEMING & ASSOCIATES LLP
1330 Post Oak Blvd., Suite 3030
Houston, TX 77056
Telephone:  (713) 621-7944
Facsimile:  (713) 621-9638

**ATTORNEYS FOR APPELLEES**

## LIST OF PARTIES AND COUNSEL

**Appellants**

Aetna Life Insurance Company, Aetna Health Inc. (formerly known as Aetna U.S. Healthcare Inc., and successor-in-interest to Aetna U.S. Healthcare of North Texas Inc.), and AET Health Care Plan, Inc. (collectively, "Aetna")

**Counsel for Appellants:**

Jason S. Brookner
Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201

John B. Shely
Andrews Kurth LLP
600 Travis, Suite 4200
Houston, Texas 77002

**Appellees**

Kenneth Kollmeyer, M.D., and Lawrence Alter, M.D., and the healthcare providers (physicians and medical groups) listed at R4:645-46 (collectively, "the Providers")

**Counsel for Appellees:**

Kevin D. McCullough
Rochelle McCullough
325 N. St. Paul, Suite 4500
Dallas, Texas 75201

J. Ken Johnson
Sylvia Davidow
Fleming & Associates, L.L.P.
1330 Post Oak Blvd., Suite 3030
Houston, Texas 77056-3019

# TABLE OF CONTENTS

LIST OF PARTIES AND COUNSEL........................................................................i

RECORD REFERENCES ................................................................................ iii

TABLE OF AUTHORITIES ...............................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ........................................... viii

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF ISSUES  ...................................................................................1

STANDARD OF REVIEW ....................................................................................2

SUMMARY OF ARGUMENT ...............................................................................3

STATEMENT OF THE CASE................................................................................6

STATEMENT OF FACTS .....................................................................................8
A.    The Providers' Healthcare Services to Aetna HMO Enrollees ......................8
B.    The Providers' State Case Against Aetna .....................................................9
C.    Aetna's Removal of the Providers' State Case ............................................10
D.    Administrative Closure of the Providers' Case ...........................................11
E.    Change in the Law:  No Medicare Part C Exhaustion of Remedies ............12
F.    The Providers' Motion to Reopen and Remand ...........................................12

ARGUMENT AND AUTHORITIES....................................................................13
A.    The Bankruptcy Court's Order Reopening the Providers'
      Administratively Closed Case Is Legally Correct and Should be
      Affirmed in All Respects .............................................................................13
      1.    The Order of Administrative Closure Stayed the Providers'
            Case and Removed It from the Bankruptcy Court's Active
            Docket........................................................................................13
      2.    Because the Providers' Case was Administratively Closed, their
            Claims  are not Time-Barred and Equitable Tolling Is Irrelevant ......17
            a.    The Providers' claims are not subject to limitations ................17
            b.    Equitable tolling principles are not implicated .........................20

|  |  |  |
|---|---|---|
| 3. | Diligence Issues are not  Raised  under the Law or the Facts | 21 |
| 4. | The Order of Administrative Closure is not "Final" for Appellate Purposes | 24 |

B. The Bankruptcy Court's Findings of Fact are Not Clearly Erroneous and Should be Affirmed ............................................................28

    1. The Bankruptcy Court Properly Found that Aetna Alleged no Specific Facts Evidencing Its Prejudice by the Reopening of the Providers' Case..........................................................................28

    2. The Bankruptcy Court Properly Found that the Administrative Closure Order Imposed No Deadlines .................................29

C. The Bankruptcy Court did not Abuse its Discretion in Ordering the Equitable Remand of the Providers' Case.......................................31

CONCLUSION ..........................................................................................33

CERTIFICATE OF SERVICE ..................................................................35

## RECORD REFERENCES

- The Bankruptcy Record on Appeal will be referred to by volume and page numbers: "R___:___"

- References to the bankruptcy court's Memorandum Opinion and Order, dated February 9, 2010, will be to both its reported opinion and the record: *Kollmeyer v. Aetna Life Ins. Co. (In re Heritage Southwest Medical Group, P.A.)*, 423 B.R. 809 (Bankr. N.D. Tex. 2010) ("*Kollmeyer*"); and R1:7-17.

- References to the bankruptcy court's Memorandum Opinion and Order, dated May 20, 2004, will be to both its reported opinion and the record: *Kollmeyer v. Aetna Life Ins. Co. (In re Heritage Southwest Medical Group, P.A.)*, 309 B.R. 916 (Bankr. N.D. Tex. 2004) ("*Heritage*"); and R1:18-31.

# TABLE OF AUTHORITIES

**CASES**                                                                     **PAGE(S)**

*American Heritage Life Ins. Co. v. Orr,*
   294 F.3d 702 (5th Cir. 2002) ....................................................13, 15, 25, 26

*American Tel. & Tel. Co. v. Delta Commc'ns Corp.,*
   590 F.2d 100 (5th Cir. 1979) .................................................................16, 18

*Askanase v. LivingWell, Inc.,*
   45 F.3d 103 (5th Cir. 1995) .........................................................................30

*Baglione v. Clara Maass Med. Ctr., Inc.,*
   2006 WL 2591119 (D.N.J. Sept. 8, 2006)...............................................19, 20

*Cadle Co. v. Mims,*
   410 B.R. 757 (N.D. Tex. 2009) ......................................................................2

*Christus Health Gulf Coast v. Aetna, Inc.,*
   167 S.W.3d 879 (Tex. App.—Houston [14th Dist.] 2005) ...........................22

*Christus Health Gulf Coast v. Aetna, Inc.,*
   237 S.W.3d 338 (Tex. 2007) ...........................................................12, 23, 24

*CitiFinancial Corp. v. Harrison,*
   453 F.3d 245 (5th Cir. 2006) ......................................................................26

*Clymore v. United States,*
   217 F.3d 370 (5th Cir. 2000) ......................................................................29

*Dees v. Billy,*
   394 F.3d 1290 (9th Cir. 2005) ....................................................................18

*Emmens v. Johnson,*
   923 S.W.2d 705 (Tex. App.—Houston [1st Dist.] 1996, writ denied) .........24

*Foley v. Southwest Tex. HMO, Inc.,*
   226 F.Supp.2d 886 (E.D. Tex. 2002) ..........................................................10

*Geyen v. Marsh,*
  775 F.2d 1303 (5th Cir. 1985) .......................................................29

*Gurley v. Lindsley,*
  459 F.2d 268 (5th Cir. 1972) *mandate withdrawn,*
  466 F.2d 498 (5th Cir. 1972) .......................................................30

*Howland v. Quarterman,*
  507 F.3d 840 (5th Cir. 2007), *cert. denied*, 128 S.Ct. 2873 (2008) ..............20

*In re Coppola,*
  419 F.3d 323 (5th Cir. 2005) .........................................................3

*In re England,*
  141 B.R. 495 (N.D. Tex. 1991) ........................................................3

*In re First South Sav. Ass'n,*
  820 F.2d 700 (5th Cir. 1985) .........................................................3

*In re GGM, P.C.,*
  165 F.3d 1026 (5th Cir. 1999) ..................................................2, 32

*In re Perry,*
  345 F.3d 303 (5th Cir. 2003) .........................................................2

*In re Ramba,*
  416 F.3d 394 (5th Cir. 2005) .........................................................2

*In re  SGSM Acquisition Co., LLC,*
  439 F.3d 233 (5th Cir. 2006) .........................................................3

*International Ass'n of Machinists & Aerospace Workers v. Goodrich Corp.,*
  410 F.3d 204 (5th Cir. 2004), *cert. denied*, 546 U.S. 1015 (2005) ...............26

*Johnson v. Nyack Hosp.,*
  86 F.3d 8 (2d Cir. 1996) ............................................................18

*Johnson v. Oldcastle Precast, Inc.,*
  522 F. Supp. 2d 739 (D.Md. 2007)....................................................18

*Kobleur v. Group Hosp. & Med. Servs., Inc.*,
  954 F. 2d 705 (11th Cir. 1992) ........................................................25, 26, 27

*Kollmeyer v. Aetna Life Ins. Co.*
*(In re Heritage Southwest Medical Group, P.A.)*
  309 B.R. 916 (Bankr. N.D. Tex. 2004) .................................6, 7, 8, 11, 12, 30

*Kollmeyer v. Aetna Life Ins. Co.*
*(In re Heritage Southwest Medical Group, P.A.)*
  423 B.R. 809 (Bankr. N.D. Tex. 2010) ..............................6, 7, 13, 30, 31, 33

*Lehman v. Revolution Portfolio, L.L.C.*,
  166 F.3d 389 (1st Cir. 1999)...............................................................15, 31

*Lifecare Hosps., Inc. v. Ochsner Health Plan, Inc.*,
  139 F.Supp.2d 768 (W.D. La. 2001) ...........................................................10

*Matter of Webb*,
  954 F.2d 1102 (5th Cir. 1992) ................................................................2, 3

*Mire v. Full Spectrum Lending, Inc.*,
  389 F.3d 163 (5th Cir. 2004) .............................................................15, 26

*Northern Natural Gas v. Sheerin Gas Co.*,
  2003 WL 22594457 (W.D. Tex. Oct. 20, 2003)...........................................32

*Penn-American Ins. Co. v. Mapp*,
  521 F.3d 290 (4th Cir. 2008) ....................................................................16

*Penn West Assocs., Inc. v. Cohen*,
  371 F.3d 118 (3d Cir. 2004) ..........................................................16, 19, 31

*Penrod Drilling Corp. v. Williams*,
  868 S.W.2d 294 (Tex. 1993) .....................................................................24

*RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*,
  395 F.3d 555 (5th Cir. 2004) ...................................................12, 22, 23, 24

*South La. Cement, Inc. v. Van Aalst Bulk Handling, B.V.*,
  383 F.3d 297 (5th Cir. 2004) ....................................................................26

*TON Servs., Inc. v. Qwest Corp.*,
    493 F.3d 1225 (10th Cir. 2007) .......................................................................19

*Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.*,
    2006 WL 166491 (D.N.J. Jan. 23, 2006)...................................................19, 20

## STATUTES

28 U.S.C. § 158(a)(1) ..........................................................................................1

28 U.S.C. § 1334(c)(1) .......................................................................................31

28 U.S.C. § 1452(b) ......................................................................................3, 31

TEX. BUS. & COM. CODE § 17.46(b) ...................................................................9

TEX. CIV. PRAC. & REM. CODE ch. 134 ...............................................................9

TEX. INS. CODE art. 20A.09(2) ...........................................................................9

TEX. INS. CODE art. 21.07-6 § 12(a) ...................................................................9

TEX. INS. CODE art. 21.21 § 4 ............................................................................9

TEX. INS. CODE art. 21.21 § 16 ..........................................................................9

TEX. INS. CODE art. 21.55..................................................................................9

## RULES

BANKR. R. 8013.................................................................................................2

LOC. B.R. 8010(a)(2)..........................................................................................1

LOC. B.R. 8012.............................................................................................. viii

## STATEMENT REGARDING ORAL ARGUMENT

The Providers believe that oral argument would not significantly aid the decisional process in this appeal because the facts and legal arguments are adequately presented in the briefs.  *See* Loc. B.R. 8012.  Should the Court decide to allow oral argument, however, the Providers respectfully request that they be permitted to participate.

# JURISDICTIONAL STATEMENT

The Providers agree with Aetna that the Court has jurisdiction to hear this appeal from a final order.  *See* 28 U.S.C. § 158(a)(1).

# STATEMENT OF ISSUES

The Providers are dissatisfied with Aetna's statement of issues presented on appeal.  Therefore, they present the following statement of issues pursuant to LOC. B.R. 8010(a)(2):

1.  The Fifth Circuit holds consistently that the administrative closure of a case functions as an indefinite stay, which also removes the case from a court's active docket.  Given that unwavering precedent, the bankruptcy court concluded as a matter of law that the Providers' case should be reopened because:

    (a)  the Providers' claims were not barred by limitations or lack of diligence, nor did equitable tolling principles apply;

    (b)  the Providers' state claims were not controlled by a federal appellate court opinion on lack of Medicare remedies, but rather by a later Texas Supreme Court decision that agreed with the federal court; and,

    (c)  the Providers' failure to appeal the administrative closure of their case was legally inconsequential, since an order staying or administratively closing a case is not final for appellate purposes.

    Was the bankruptcy court correct in its legal conclusions?

2.  The bankruptcy court considered an earlier order by another judge of the same court, which had administratively closed the Providers' case to allow for their exhaustion of Medicare remedies.  The court found that the order set no deadlines or time limits for the reopening of the case.  Was the bankruptcy court's finding clearly erroneous?

3.  The bankruptcy court found, on the record, that Aetna failed to allege specific facts establishing its prejudice if the Providers' case were to be reopened.  Was the bankruptcy court's finding clearly erroneous?

4.  Having presented no issue or argument on the subject of remand, Aetna has waived appeal from that portion of the bankruptcy court's order equitably remanding the Providers' case.  *See In re GGM, P.C.*, 165 F.3d 1026, 1031-32 (5th Cir. 1999) (issue not preserved for appeal under BANKR. R. 8006 if not included in statement of issues).  Therefore, the Providers provide the issue as it would have been presented:

    Did the bankruptcy court abuse its discretion in ordering the equitable remand of the Providers' case after analyzing the relevant factors?

### STANDARD OF REVIEW

In reviewing the decision of the bankruptcy court, this Court functions as an appellate court, and thus applies the standards of review used in federal courts of appeal.  *See, e.g., In re Perry*, 345 F.3d 303, 308-09 (5th Cir. 2003) (citing *Matter of Webb*, 954 F.2d 1102, 1103 & n.1 (5th Cir. 1992)).

Under those standards, findings of fact, whether based on oral or documentary evidence, will not be set aside unless clearly erroneous.  BANKR. R. 8013; *Cadle Co. v. Mims*, 410 B.R. 757, 759 (N.D. Tex. 2009) (citations omitted).  Findings will not be held clearly erroneous if they are "plausible in the light of the record read as a whole."  *In re Ramba*, 416 F.3d 394, 402 (5th Cir. 2005).  Therefore, only if the Court is "left with the definite and firm conviction that a mistake has been committed" by the lower court will a finding be held

clearly erroneous. *In re Coppola,* 419 F.3d 323, 326 (5th Cir. 2005); *Matter of Webb*, 954 F.2d at 1104.

Conclusions of law are reviewed de novo, under a non-deferential standard. *See In re SGSM Acquisition Co., LLC*, 439 F.3d 233, 238-39 (5th Cir. 2006) (citation omitted); *In re First South Sav. Ass'n*, 820 F.2d 700, 711 (5th Cir. 1985); *In re England*, 141 B.R. 495, 497 (N.D. Tex. 1991).

Finally, bankruptcy courts are granted discretion to order the equitable remand of cases before them.  28 U.S.C. § 1452(b).  Therefore, although Aetna waived appeal from the court's order equitably remanding the case, abuse of discretion is the proper standard of review.

## SUMMARY OF ARGUMENT

This appeal has nothing to do with the merits of the Providers' suit against Aetna.   Rather, the dispute revolves solely around the legal effect of an administrative closure — a procedural question with only one answer, which favors the Providers in all respects.  Consequently, Aetna's entire brief is driven by its indignation alone.  It is not supported by relevant authority because Aetna has no choice; all law lies squarely against it.

Aetna's problems began after the Providers' case against it was transferred to the court where the bankruptcy proceedings against Heritage (the debtor Heritage Southwest Medical Group, P.A., an Aetna third-party delegated entity)

were pending (Hon. Steven A. Felsenthal then presiding).   Some months earlier (summer 2003), the Providers had filed suit in an Austin state court, bringing Texas statutory and common law claims against Aetna for its failure to pay them for healthcare services they had rendered to enrollees in an Aetna HMO.   Although the Providers advanced no federal claims and did not sue the debtor Heritage, Aetna removed the case alleging bankruptcy jurisdiction.

In early 2004, Aetna moved to dismiss the Providers' pending case for lack of subject matter jurisdiction.   It maintained that the Providers had brought Medicare-related claims, and thus were required to exhaust administrative remedies under the Medicare scheme before being permitted to proceed with their lawsuit.

Unfortunately for Aetna, however, the bankruptcy court declined to dismiss the action for lack of subject matter jurisdiction.   Moreover, it chose not to dismiss the Providers' case with or without prejudice and/or to retain it on the active docket, any of which it could properly have done.   Instead, in May 2004 the court ordered the case administratively closed, allowing the Providers to exhaust their administrative remedies if possible.   The order imposed no deadlines or conditions upon the Providers.   Due to its administrative closure, the case was stayed and removed from the bankruptcy court's active docket.   At no time did Aetna request the court's reconsideration or modification of its order.

During the time the Providers' case remained stayed and inactive, the law on exhaustion of Medicare remedies started to change. The Fifth Circuit concluded at the end of 2004 that Medicare Part C does not require exhaustion of administrative remedies, because in fact there are none.   It took several more years, but by late 2007 the Texas Supreme Court finally agreed with the Fifth Circuit.   Thus, assuming the case were remanded as the Providers had requested, exhaustion of remedies would be a non-issue in the state court.[1]

Aetna's appeal demonstrates its continuing refusal to accept the legal consequences of the court's earlier decision to administratively close the Providers' case.   When faced with the procedural facts, the bankruptcy court adhered to clear and undeviating authority on the effect of an administrative closure on a case:   the procedure merely stays proceedings and removes the case from the active docket.   Therefore, the court ordered the Providers' case reopened; it could have done nothing else under the law.

Aetna's finger-pointing and table-pounding notwithstanding, the law on administrative closure has remained constant over the years and throughout the circuits.   The Fifth Circuit has pronounced repeatedly that the procedure is an open-ended stay that also serves to remove a case from an active docket for

---

[1]   The Providers attached to their motion to reopen and abstain/remand a copy of their proposed second amended petition, to be filed should their case be remanded. R4:633-46.

bookkeeping purposes.  Accordingly, an administratively closed and inactive case is not subject to Aetna's affirmative defenses of limitations and lack of diligence, nor, contrary to Aetna's contention, does the issue of equitable tolling arise.

In light of such precedent, the Court correctly granted the Providers' motion, ordered their case reopened, and equitably remanded it to Travis County state court.  This Court should affirm the order in all respects, thus permitting the Providers' case to be tried on the merits.

## STATEMENT OF THE CASE

This is an appeal by Aetna from an order of the bankruptcy court granting the Providers' motion to reopen their case (*i.e.*, the *Heritage* adversary proceeding (No. 04-3005)), and to remand it.  *Kollmeyer*, 423 B.R. 809 (Bankr. N.D. Tex. 2010); R1:7-17.   On May 20, 2004, the bankruptcy court had ordered the Providers' case administratively closed to allow them to exhaust their Medicare remedies if possible.  *Heritage*, 309 B.R. 916 (Bankr. N.D. Tex. 2004); R1:18-31.

On November 1, 2001, following an earlier involuntary petition against Heritage Southwest Medical Group, P.A. (Heritage) filed in the bankruptcy court, the court entered an order for relief against Heritage under Chapter 7.  R3:615. Heritage was the third-party entity that Aetna had delegated to provide Medicare HMO administrative services, including payment for healthcare services rendered to enrollees.  R2:96-97.  Heritage never paid the Providers, nor did Aetna.  R2:98.

During the pendency of *Heritage*, in mid-2003 the Providers sued Aetna (but not Heritage) in state court.   Bringing only Texas statutory and common law causes of action, they sought payment for services rendered.  R2:49-61.  After the Providers amended their petition in October 2003, Aetna removed the action under bankruptcy jurisdiction.  R2:65-75; 40-43.  In late 2003, the Providers' case was transferred on Aetna's motion to the *Heritage* bankruptcy court.  R2:92-93.

Some weeks later, Aetna moved to dismiss for lack of subject matter jurisdiction, contending that although the Providers' claims were Medicare-related they failed to exhaust their presuit Medicare remedies.   R2:94-105.   The bankruptcy court granted different relief, ordering the Providers' case administratively closed.  R3:237-50.  During the pendency of the administrative closure Medicare law changed, holding remedies unavailable for Medicare HMO cases.  R2:261-80.  Therefore, the Providers did not exhaust Medicare remedies.

On August 31, 2009, the Providers moved to reopen their administratively closed case and reurged their motion to abstain or remand.  *Id.*  Their combined motion was based on the lack both of Medicare remedies and any connection to bankruptcy proceedings.  On February 9, 2010, the bankruptcy court granted the Providers' motion in all respects.  *Kollmeyer*, 423 B.R. 809 (Bankr. N.D. Tex. 2010); R1:7-17.  Aetna's appeal followed.  R1:1-3.

## STATEMENT OF FACTS

Because the background facts leading to the present appeal are based for the most part on established procedural events, they are largely undisputed:

**A.    The Providers' Healthcare Services to Aetna HMO Enrollees**

Aetna is an insurance company that operates health maintenance organization (HMO) insurance plans in Texas.  One of the plans was a Medicare Part C HMO ("Medicare + Choice" or "M+C") plan formerly known as NylCare 65.  R2:95-97; R4:634-36.

The Providers are a group of individual physicians and medical groups in Texas.  They had all rendered covered healthcare services to enrollees in an Aetna Texas HMO plan.  R4:645-46.

Because Aetna operated a Medicare HMO plan, it received monthly capitated funds from the Healthcare Financing Administration (HCFA, now known as CMS) to provide healthcare benefits to eligible plan participants.  In turn, Aetna made monthly payments to Heritage, the third-party entity that it had delegated to perform healthcare-related administrative services on its behalf.  Among Heritage's responsibilities was paying the Providers for the healthcare services they had provided.  R4:635; R2:96-97; *Heritage*, 309 B.R. at 920; R1:27.

On January 5, 2001, while Heritage was functioning as Aetna's third-party delegated entity, an involuntary bankruptcy petition was filed against it.  On

November 1, 2001, an order for relief under Chapter 7 was entered against Heritage.   R3:615.   Presumably because of its bankruptcy, Heritage failed to compensate the Providers for the healthcare services they had rendered to Aetna enrollees.   Aetna has not paid them either.   R2:98.

## B.   The Providers' State Case Against Aetna[2]

On July 24, 2003, the Providers sued Aetna in an Austin state court, seeking payment for the healthcare services they had provided to enrollees in the Aetna Medicare HMO.   *See* Case No. GN302619; in the 345th Judicial District Court of Travis County, Texas.   R2:44-63.   The Providers' lawsuit brought several Texas statutory and common-law claims against Aetna:  violation of TEX. INS. CODE art. 21.55; violation of TEX. INS. CODE art. 20A.09(2); negligence per se and common law negligence; negligent misrepresentation; common law fraud; violation of TEX. CIV. PRAC. & REM. CODE ch. 134 (Texas Theft Liability Act); violations of TEX. INS. CODE art. 21.21 §§ 4 and 16, and of TEX. BUS. & COM. CODE § 17.46(b); and, violation of TEX. INS. CODE art. 21.07-6 § 12(a).   R1:19.   The Providers' petition

---

[2]   An analogous lawsuit involving healthcare providers against another insurer, PacifiCare, is presently pending in an Austin state court.   R2:277-78.   Unlike this case, the other action had never been removed to bankruptcy court.   The Austin court reached the merits of the case, holding PacifiCare liable for nonpayment to the providers, despite its delegation of their payment to a third-party entity. R3:582-83.

did not sue the debtor Heritage, nor did it bring any federal claims against Aetna. On October 3, 2003, the Providers amended their state pleading.  R2:65-75.

## C.      Aetna's Removal of the Providers' State Case

Two weeks later, on October 16, 2003, Aetna removed the Providers' action to the U.S. Bankruptcy Court for the Western District of Texas (Austin) on bankruptcy grounds.  R2:40-43.  It subsequently sought the transfer of the case to the bankruptcy court where the Heritage Chapter 7 proceedings were pending. On December 8, 2003, the Providers' case was ordered transferred to the U.S. Bankruptcy Court for the Northern District of Texas. R2:92-93.

On January 26, 2004, Aetna moved to dismiss the action for lack of subject matter jurisdiction.  It insisted that although the Providers had not brought any federal claims, they were actually seeking reimbursement for Medicare-related healthcare services.   R2:94-105.   Consequently, Aetna maintained, as a precondition to judicial review the Providers were required to exhaust their Medicare Part C administrative remedies.  *Id.*

Because there was no circuit law at the time, Aetna relied on two district court opinions as support for its position.  *See  Foley v.  Southwest Tex. HMO, Inc.,* 226 F.Supp.2d 886 (E.D. Tex. 2002); and *Lifecare Hosps., Inc. v.  Ochsner Health Plan, Inc*., 139 F.Supp.2d 768 (W.D. La. 2001).  R2:126-49.

The Providers moved to remand their transferred case two days after Aetna moved to dismiss it.  R2:152-61.  Then, in early March 2004 they opposed Aetna's motion to dismiss, maintaining that Medicare Part C (HMO Medicare) does not require the exhaustion of Medicare remedies.  R2:170-93.

## D.    Administrative Closure of the Providers' Case

On  May  20,  2004,  following  the  parties'  briefing  and  argument,  the bankruptcy court issued an order on Aetna's motion.  R3:297-388. The court held in part that it could not "conclude that Part C disputes are excluded from the administrative process."  *Heritage,* 309 B.R. at 921; R1:28.   But the court did not dismiss the Providers' case for lack of jurisdiction, as Aetna had urged:  "[R]ather than  dismiss  the  .  .  .  complaint,  the  Court  will  administratively  close  the [Providers' case] without prejudice to reopening on motion and hearing," thereby allowing them to exhaust their administrative remedies under Medicare.  *Id.* at 922. The order was unconditional; it imposed no deadlines for the date of a motion to reopen but left it open-ended.

Although it ordered the case administratively closed, the bankruptcy court still remained "troubled by the prospect that the [administrative] resolution of [the] dispute may be futile."  *Id.* at 921; R1:26.  Therefore, the court ordered the denial without prejudice of the Providers' motion to remand and/or abstain, indicating

that it would "revisit discretionary abstention" should Medicare remedies prove futile or be determined not to apply.  *Id.* at 922; R1:30.

The bankruptcy court denied the Providers' motion to reconsider its order on June 10, 2004.  R2:259-60.  Aetna neither sought reconsideration of the court's denial of the specific relief it had requested nor asked for conditions to be added to the order.  R3:588 (bankruptcy court's observation that Aetna "could have put time periods within which . . . actions could have been taken.").

## E.    Change in the Law:  No Medicare Part C Exhaustion of Remedies

During the stay of the Providers' case and its pendency on the bankruptcy court's inactive docket, the law on Medicare exhaustion of remedies changed.  The change began on December 30, 2004, with a Fifth Circuit decision holding that the exhaustion of administrative remedies is impossible under Medicare Part C.  *See RenCare, Ltd. v. Humana Health Plan of Tex., Inc.,* 395 F.3d 555 (5th Cir. 2004).  Almost three years later, on November 30, 2007, the Texas courts finally agreed with the Fifth Circuit.  *See Christus Health Gulf Coast v. Aetna, Inc.,* 237 S.W.3d 338 (Tex. 2007).

## F.    The Providers' Motion to Reopen and Remand

On August 30, 2009, the Providers moved to reopen their administratively closed case, and reurged their earlier motion for abstention and remand.  R2:261-80.  Their motion was founded on the definitive law of the Fifth Circuit and the

Texas Supreme Court, both holding that there were no Medicare Part C remedies to exhaust.  After the parties' briefing, R2:261-96; R3:390-401, a hearing on the Providers' motion was held on January 25, 2010.  R3:530-614.  The bankruptcy court issued an opinion and order on February 9, 2010, following post-hearing additional briefing, R3:402-37.  *Kollmeyer*, 423 B.R. 809; R1:7-17.   The court granted the Providers' motion in all respects, ordering the case reopened and remanded.   Aetna appealed the bankruptcy court's granting of the Providers' motion to reopen; it did not appeal the court's order equitably remanding the case to the Austin state court.  R1:1-3.

## ARGUMENT AND AUTHORITIES

**A.    The Bankruptcy Court's Order Reopening the Providers' Administratively Closed Case Is Legally Correct and Should be Affirmed in All Respects**

### 1.    The Order of Administrative Closure Stayed the Providers' Case and Removed It from the Bankruptcy Court's Active Docket

Aetna devotes the first eight pages of its argument, Aetna br. at 15-23, to claiming that the bankruptcy court erred in ordering the Providers' case reopened because the court improperly "elevate[d] form over substance."  *Id.* at 15.  Further, it maintains that the court committed error by relying on "snippets" of a Fifth Circuit decision holding that an administratively closed case is no longer active. *See Kollmeyer*, 423 B.R. at 813, relying in part on *American Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 715 (5th Cir. 2002) (Dennis, J. concurring).  R1:13.  In like

fashion, Aetna urges that the bankruptcy court "misse[d] the point" by distinguishing between cases that remain on an active docket and those that do not. Aetna br. at 16-17.

The bankruptcy court did not err or miss the point at all in drawing that dispositive distinction. Therefore, Aetna's challenges to the court's conclusions meet with no success, since its combined disregard of established law and failure to present any other controlling authority doom its argument. In short, the bankruptcy court's legal analysis is entirely correct and should be affirmed.

Aetna's brief establishes its persistent refusal to acknowledge the function of administrative closure and the procedure's legal ramifications. By having ordered the Providers' case administratively closed and declining to impose any deadlines, the bankruptcy court unconditionally stayed the case for an indefinite period and removed it from the active docket. Consequently, the issues Aetna raises concerning limitations, diligence and equitable tolling have no bearing on the Providers' case.

Just as it did in the bankruptcy court, Aetna continues to erroneously conflate the administrative closure/stay procedure with two legally distinguishable case-termination procedures: dismissal without prejudice of a case pending on a court's active docket; and, dismissal with prejudice for want of prosecution of a case on the active docket. Because Aetna incorrectly merges administrative

closure/stay, which is **not a dismissal**, with two other judicial procedures that **are dismissals**, it improperly raises issues that have no bearing on the case. Consequently Aetna's brief focuses on inapposite case law concerning limitations, equitable tolling, and diligence.

Aetna's arguments fly in the face of Fifth Circuit black letter law (and, for that matter, the law of virtually every other circuit), which equates administrative closure with a stay. The only distinction between the two procedures is the docket control component added by an administratively closed case.

The Fifth Circuit explained the  underlying rationale clearly:

> District courts frequently make use of this device to remove from their pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending). The effect of an administrative closure is no different from a simple stay, except that it affects the count of active cases pending on the court's docket; *i.e.,* administratively closed cases are not counted as active.

*See Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 167 (5th Cir. 2004) (citing *Lehman v. Revolution Portfolio, L.L.C.*, 166 F.3d 389 (1st Cir. 1999)).  *Lehman*, upon which the Fifth Circuit relied, specifically approved the judicial device for certain situations: "We endorse the judicious use of administrative closings by district courts in circumstances in which a case, though not dead, is likely to remain moribund for an appreciable period of time."  *Id.* at 392.  *See also, e.g.,* *American Heritage,* 294 F.3d at 715 ("**[A]dministrative closure** reflects nothing

more than the federal courts' overarching concern with tidy dockets; it **has no jurisdictional significance**.)  (Dennis, J. concurring) (citation omitted) (emphasis supplied); *American Tel. & Tel. Co. v. Delta Commc'ns Corp.*, 590 F.2d 100, 102-03 (5th Cir. 1979) (vacating  dismissal in favor of stay pending FCC primary jurisdiction determination); *Penn-American Ins. Co. v. Mapp*, 521 F.3d 290, 295 (4th Cir. 2008) ("An order administratively closing a case is a docket management tool that has no jurisdictional effect."); *Penn West Assocs., Inc. v. Cohen*, 371 F.3d 118, 128 (3d Cir. 2004) (surveying relevant case law).

In response to the overwhelming weight of authority against it, Aetna either ignores the case law outright or draws meaningless distinctions from it.  Aetna br. at 15-23.  It does not, however, cite contradictory authority.

Finally, Aetna  brings to the Court's attention the fact that the 2004 order of administrative closure "makes no express mention of a stay of any kind"; and, further, that the Providers did not request a stay.  Aetna br. at 18.  But its argument is unavailing, since the stay of the case was concomitant with the bankruptcy court's order of administrative closure.  Significantly, Aetna is unable to produce even one decision holding that further action is ever necessary to effectuate a stay after the administrative closure of a case is ordered.

In summary, nothing in Aetna's brief, aside from its ongoing ipse dixit, stands for the proposition that an administrative closure of a case is anything more

than an indefinite stay.  And, consequently, as the Providers discuss below, none of the relevant case law supports Aetna's position that the bankruptcy court erred in reopening the Providers' case.

> ### 2.   Because the Providers' Case was Administratively Closed, their Claims  are not Time-Barred and Equitable Tolling Is Irrelevant

>> #### a.   The Providers' claims are not subject to limitations

Aetna's refusal to accept governing authority removes all credibility from its argument.  Because case law that the Providers cite holds uniformly that a case is stayed and removed from the active docket when administratively closed, Aetna's insistence that the Providers' claims are time-barred is legally wrong.  Under the law, limitations concerns may be raised only in cases dismissed with or without prejudice from an active docket — not in cases that have been stayed or administratively closed and placed on an inactive docket, as Aetna would have the Court believe.  Therefore, because the opinions upon which Aetna relies are based on a false premise, not a single one applies.

One district court clearly explained the distinction between stays and dismissals:

> A stay is simply a pause in a case.  Although a dismissed case must be refiled within the time mandated by the statute of limitations, a stayed case may be reopened even after the applicable statute of limitations has run.

*See Johnson v. Oldcastle Precast, Inc.*, 522 F. Supp. 2d 739, 741 (D.Md. 2007) (citations omitted); *see also Dees v. Billy*, 394 F.3d 1290, 1293-94 (9th Cir. 2005) (relying on Fifth Circuit authority).

As does the Fifth Circuit, the Second Circuit draws a bright line between cases stayed and those dismissed without prejudice, emphasizing the potential for limitations problems in only the latter:

> The statute of limitations is not a concern where the deferring court has issued a stay — the action is simply reactivated, if necessary. . . .
>
> * * *
>
> But where the action has been dismissed without prejudice, a plaintiff's subsequent court filing is vulnerable to a time-bar because the dismissal in and of itself does not halt the running of the limitations period, even though designated to be without prejudice.

*See Johnson v. Nyack Hosp.*, 86 F.3d 8, 11 (2d Cir. 1996) (citing *American Tel. & Tel. Co.*, 590 F.2d at 102; other citations omitted).

Nor are the Second and Fifth Circuits unique. As is evident from the dearth of applicable authority in Aetna's brief, the vast majority of courts draw the same dispositive distinction, concluding that only cases dismissed without prejudice may be time-barred.

Not surprisingly, therefore, Aetna has no choice but to admit that "there appear to be no Texas cases" holding a case like the Providers' barred by

limitations.  Aetna br. at 19.  In fact, Aetna might just as easily have observed the lack of applicable circuit law anywhere.

Even an opinion that, according to Aetna, "suggests" that administrative closure does not toll limitations, does no such thing.  *Id.  See TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225 (10th Cir. 2007).  In fact, the Tenth Circuit vacated a district court's dismissal of the proceedings, so as to allow for a stay.  *Id.* at 1244.

And, Aetna's reliance on a New Jersey district court decision is equally unsuccessful.  *See Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.*, 2006 WL 166491 (D.N.J.  Jan. 23,  2006)  (holding  that  administrative  closure  does  not  toll limitations).  Aetna br. at 20.  Even assuming *Walsh* had been correctly decided and was not just an anomalous minority lower court opinion at odds with Third Circuit precedent, *see Penn West Assocs.*, 371 F.3d 118, its procedural facts are distinguishable.  Unlike the Providers' case, in which a general stay was ordered, only discovery was stayed in *Walsh*, leaving the case on the active docket. Although the court went on to administratively terminate *Walsh* for a finite period of time, it directed specifically that "the litigation . . . proceed . . . immediately toward conclusion."  2006 WL 166491 at *3.  In short, *Walsh* certainly does not supplant the authority upon which the bankruptcy court properly relied.

Preferring not to confront the mountain of precedent defeating its position, Aetna also cites another New Jersey district court opinion.  *See Baglione v. Clara*

*Maass Med. Ctr., Inc.*, 2006 WL 2591119, (D.N.J. Sept. 8, 2006).  Aetna br. at 21.
The second opinion, in which a New Jersey court granted a motion to reopen, does
not support Aetna's argument either.  The *Baglione* court reinstated a seven-year
old complaint in an administratively closed case, holding it was not time-barred.
At the same time, the court surveyed various conclusions on the issue reached by
*Walsh* and other courts, with *Walsh* being in the decided minority.  *Id.* at ** 3-4.

In summary, the statute of limitations is not implicated in the Providers' case
in any way.  First, for reasons discussed at length above, their claims are not time-
barred under the stay.  And, second, Aetna has not contended that the Providers'
state court case was not timely filed.  Therefore, limitations was not a problem at
the commencement of the litigation.

### b.    Equitable tolling principles are not implicated

A doctrine used very rarely, equitable tolling, is reserved for those
exceptional instances when strict application of the statute of limitations would be
inequitable.  *See, e.g., Howland v. Quarterman*, 507 F.3d 840, 845 (5th Cir. 2007),
*cert. denied*, 128 S.Ct. 2873 (2008) (declining to apply doctrine; circumstances
were not exceptional).

Aetna refers to the "failure-to-prosecute" cases, taking the position that the
Providers' case should be dismissed, since they are not entitled to benefit from the
equitable tolling doctrine.  Aetna br. at 16-17, 20-23.  Had the Providers' case been

dismissed with or without prejudice, questions of limitations and tolling might have arisen.  But because the case was stayed and inactive, limitations is not an issue and equitable tolling principles have no bearing on it.

### 3.    Diligence Issues are not  Raised  under the Law or the Facts

Also recurrent throughout Aetna's brief is the related theme that the Providers' action should have been dismissed due to their purported lack of diligence in prosecuting it.  Specifically, Aetna complains that the bankruptcy court committed legal error by not holding that the Providers' "unwarranted five-year delay" and their "abject failure to act" merited the dismissal of their case. Aetna br. at 26.  Likewise, it claims, the court should have held that the Providers improperly "slept on their rights" by not moving to reopen their case as soon as the Fifth Circuit held that exhaustion of remedies did not apply.  *Id.* at 23.

Because its argument rests on false factual and legal premises, Aetna has presented no grounds for reversal.  At the outset, for the same reasons that the Providers' claims are not time-barred, thereby rendering the equitable tolling doctrine inapplicable, an administratively closed and inactive case does not implicate diligence/want of prosecution principles.  Beyond that legal truism, however, Aetna's charge that a five-year delay was "inexcusable," Aetna br. at 23, is both exaggerated and misleading.  Nor is it legally sound, given the fact that the Providers brought only state claims against Aetna.

A review of the timeline below puts the purported "delay" in context.  As is evident, from the day that the Fifth Circuit handed down *RenCare v. Humana* until the Texas Supreme Court denied rehearing in *RenCare's* Texas analog, *Christus v. Aetna*, slightly under three years — not five years — had elapsed:

| | |
|---|---|
| **07/24/03** | **The Providers sued Aetna in Texas state court:** <br> *Providers v. Aetna*; Cause No.GN-302619; in the 345th Judicial District Court, Travis County, Texas |
| **10/16/03** | **Aetna removed the Providers' lawsuit under bankruptcy jurisdiction and had it transferred to the bankruptcy court:** <br> *Providers v. Aetna*; Adversary No. 04-3005 |
| **10/02/03** | **State trial court dismissed earlier suit against Aetna (*Christus*) based on lack of subject matter jurisdiction:** <br> *Christus Health Gulf Coast v. Aetna*; Cause No. 2002-38846; in the 157th Judicial District Court, Harris County, Texas |
| **12/30/04** | **5th Circuit issued *RenCare*:** <br> *RenCare, Ltd. v. Humana Health Plan of Tex.*, 395 F.3d 555 (5th Cir. 2004):  no exhaustion of remedies under Medicare Part C |
| **03/15/05** | **5th Circuit denied rehearing in *RenCare*:** <br> *RenCare v. Humana* |
| **04/14/05** | **State appellate court affirmed dismissal of *Christus*:** <br> *Christus v. Aetna*; No. 14-03-01282-CV; in the 14th Court of Appeals, 167 S.W.3d 879 (Tex. App.—Houston [14th Dist.] 2005) |
| **07/21/05** | **State appellate court denied rehearing en banc in *Christus*:** <br> *Christus v. Aetna* |

| 09/02/05 | **Petition for review filed at Texas Supreme Court:** *Christus v. Aetna* |
|---|---|
| 08/31/07 | **Texas Supreme Court reversed appellate decision:** *Christus v. Aetna*, 237 S.W.3d 338 (Tex. 2007): no exhaustion of remedies under Medicare Part C; following *RenCare* |
| 11/30/07 | **Texas Supreme Court denied rehearing of *Christus*:** *Christus v. Aetna* |

Finally, in a last-ditch attempt to convince the Court to reverse the bankruptcy court's holding, Aetna urges that *Christus v. Aetna*, decided by the Texas Supreme Court, is not controlling. Therefore, according to Aetna, the decision provides no reason for any alleged dilatory conduct on the Providers' part. Rather, Aetna maintains, *RenCare* "holds sway on interpreting Medicare's exhaustion requirements." Aetna br. at 23. It then tries to clinch its position by asserting the legal proposition that federal courts give no deference to state court decisions on federal law.

Although that may be true, Aetna has it backwards. The point is that the Providers sued Aetna in state court, bringing only Texas common law and statutory claims. Therefore, the issue is not whether federal courts give deference to state court decisions on federal law. To the contrary, the question posed is the precise opposite: Must Texas courts follow federal court decisions? And, the answer is that they are under no obligation to do so:

> While Texas courts may certainly draw upon the precedents of the
> Fifth Circuit, or any other federal or state court, in determining the
> appropriate federal rule of decision, they are *obligated* to follow only
> higher Texas courts and the United States Supreme Court.

*Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) (italics in

original). *See also Emmens v. Johnson*, 923 S.W.2d 705, 709 (Tex. App. —

Houston [1st Dist.] 1996, writ denied) (declining to follow federal common law;

"we are not controlled by decisions of the lower federal courts, including the Fifth

Circuit").

In light of their state-law case, the Providers' decision not to follow federal

law (*RenCare*) but to wait for the supreme court to determine the issue in *Christus*

makes legal sense.   Accordingly, Aetna has furnished this Court with neither

factual nor legal grounds upon which to base error.   The bankruptcy court's order

should stand.

### 4.   The Order of Administrative Closure is not "Final" for Appellate Purposes

Making much of the fact that the Providers did not appeal the administrative

closing of their case in 2004, Aetna claims reversible error for this reason as well.

It had even gone so far as to argue earlier to the bankruptcy court the general

proposition that the "American Heritage [Fifth Circuit] case holds that an order

administratively closing a case is appealable."   R3:545.   On appeal, however,

Aetna appears to have backed away from its former position.   It now argues error

because the bankruptcy court did not follow an opinion from another circuit, which Aetna insists is "factually indistinguishable" from the present case. *See Kobleur v. Group Hosp. & Med. Servs., Inc.*, 954 F. 2d 705 (11th Cir. 1992).  Aetna br. at 33-36.

Once again, Aetna has the law wrong. There could never have been an appeal from the bankruptcy court's order, given the Fifth Circuit's reiterated conclusions that an administrative closure/stay is not a final order for appellate purposes.  Therefore, whether the Providers had attempted to appeal is irrelevant. Undoubtedly, any such appeal would have been dismissed for lack of jurisdiction.

The broad representation that Aetna first made to the bankruptcy court, *i.e.,* that *American Heritage* allows for an appeal, was wrong then and still is.  Far from permitting appeals from all stayed cases, *American Heritage* limited its holding to motions to compel arbitration.  Only under those particular circumstances did the Fifth Circuit conclude that administrative closure was a final order from which an appeal could lie:

> [W]here a district court with nothing before it but whether to compel arbitration and stay state court proceedings issues an order compelling arbitration, staying the underlying state court proceedings, and closing the case, thereby effectively ending the entire matter on its merits and leaving nothing more for the district court to do but execute the judgment, appellate jurisdiction lies, as the decision is "final". . . .

294 F.3d at 708.

Significantly, however, post-*American Heritage* decisions do not allow for even that narrow exception.  The Fifth Circuit has held for some years that all stays/administrative closures are unappealable for want of jurisdiction.   For instance, in *Mire v. Full Spectrum Lending, Inc.*, the appellate court dismissed an appeal from the granting of a motion to compel arbitration that had administratively closed the case.  389 F.3d 163 (5th Cir. 2004).  Since the order was the functional equivalent of a stay of district court proceedings, the court held, it did not constitute a "final order" from which appeal would lie.  *Id.* at 167 (analyzing previous opinions on the issue, including *American Heritage).* Likewise, in *CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 252 (5th Cir. 2006), the Fifth Circuit dismissed an appeal for lack of jurisdiction because an "order granting a stay of any action" may not be appealed. Indeed, the court took pains to note its conclusions on two previous occasions that administrative closure of a case was equivalent to a stay, thus prohibiting appellate review.  *Id.* at 250 & n. 11 (citations omitted).  *See also International Ass'n of Machinists & Aerospace Workers v. Goodrich Corp.,* 410 F.3d 204, 208 & n.3 (5th Cir. 2004), *cert. denied*, 546 U.S. 1015 (2005) (citing *Mire*); *South La. Cement, Inc. v. Van Aalst Bulk Handling, B.V.*, 383 F.3d 297, 301-02 & n. 3 (5th Cir. 2004) (same).

Having spurned all apposite authority, Aetna is thus compelled to depend solely on an isolated Eleventh Circuit opinion, *Kobleur.*  Aetna br. at 33-35.  But

*Kobleur* is unique in its conclusion that dismissal without prejudice for failure to exhaust administrative remedies is a final order.  Despite Aetna's reliance on the opinion, it is not controlling, and certainly does not displace on-point and consistent Fifth Circuit law.

First, *Kobleur* is inapposite because it does not deal with administrative closure but rather with the dismissal without prejudice of a case from the active docket.  And, as discussed above at 14-16, dismissals without prejudice are legally distinguishable from those cases that are administratively closed or stayed.  In fact, the only similarity between *Kobleur* and the present case lies in the fact that both involved exhaustion of remedies.

Second, however, even if *Kobleur* were not inapplicable on its face, it is not a decision handed down by the Fifth Circuit.  To the contrary, not only was *Kobleur* issued by the Eleventh Circuit, it predates Fifth Circuit precedent by ten years or more.

Therefore, Aetna's finality argument provides no grounds for reversal either. The Providers obviously did not let "their appeal rights languish" as Aetna insists, Aetna br. at 36, since the law establishes that there are no such rights.

**B.      The Bankruptcy Court's Findings of Fact are Not Clearly Erroneous and Should be Affirmed**

       **1.      The Bankruptcy Court Properly Found that Aetna Alleged no Specific Facts Evidencing Its Prejudice by the Reopening of the Providers' Case**

Aetna also complains that the bankruptcy court erred by failing to agree that it alleged specific facts establishing prejudice.  Aetna br. at 28-30. Under a clearly erroneous standard — or even under the incorrect de novo standard that Aetna asserts — the bankruptcy court's finding should be upheld.

Aetna's longest and most detailed explanation of the prejudice it had purportedly suffered was a short unsupported argument presented at a hearing on the Providers' motion to reopen:

> We haven't said that the documents have been disposed of. . . .  We're just saying obviously with claims that are eight, nine, and 10 years old, it is very difficult to have memories and people who remember and can help us with those claims, whether they're with the company or not.  So, obviously one of the policy reasons behind the statute of limitations' limitations is that memories fade.  Documents are lost.

R3:541.  *See also* R3:551 ("[Kollmeyer has] done nothing.  Aetna's been prejudiced as a result."); and R3:564 ("It's really not fair to Aetna at this point, especially having settled with the [Heritage] trustee . . . .").  That is the sum and substance provided to the court as "evidence" of Aetna's prejudice.  Obviously, it is far from sufficient.

Although the hearing establishes Aetna's continued reliance on the statute of limitations, its accusations of delay and prejudice actually derive from the doctrine of laches. For reasons discussed above, neither doctrine applies to a stayed case on a court's inactive doctrine.

But further, to establish that laches bars a claim, a party must show **inexcusable delay** that caused **undue prejudice**. *See, e.g., Clymore v. United States*, 217 F.3d 370, 376 (5th Cir. 2000) (reciting standards); *Geyen v. Marsh*, 775 F.2d 1303, 1310 (5th Cir. 1985) (same). Aetna can do neither.

Under Fifth Circuit standards, Aetna's general and vague allegations of prejudice are insufficient to support a finding of "undue prejudice." Although in opposing UBS's motion to reopen Aetna could have tried to produce evidence that it considered supportive of a showing of prejudice, it did not do so. In any event, however, relevant authority holds that any delay must be shown to be inexcusable. Given the nature of the Providers' claims against Aetna, their delay, if any, was understandable and excusable.

Once again, therefore, the bankruptcy court's decision is free of error. This Court should affirm.

### 2.    The Bankruptcy Court Properly Found that the Administrative Closure Order Imposed No Deadlines

In addition, Aetna attacks the court's determination that the May 2004 order administratively closing the Providers' case contained no deadline for the filing of

a motion to reopen it.   Aetna br. at 30-33. Bordering on the frivolous, Aetna's

argument has no legal foundation.   It cannot, given the plain and unambiguous

wording of the bankruptcy court's order.   *Heritage*, 309 B.R. at 922; R1:13-14.

Verbatim, the order reads as follows:

> IT IS ORDERED that the motions to remand and/or abstain are
> DENIED, without prejudice.
>
> IT IS FURTHER ORDERED that the adversary proceedings
> are ADMINISTRATIVELY CLOSED pending exhaustion of
> administrative remedies.

In light of the wording of the order, the bankruptcy court observed properly

that

> [i]n fact, the Memorandum Opinion did *not* place any time restrictions
> on the Providers' exhaustion of remedies.   While the Court does not
> disagree that such a provision may have been beneficial, and that the
> Providers have engaged in some delay, it would be manifestly
> inequitable to hold that a deadline did, in fact, exist by virtue of Judge
> Felsenthal's order, that the Providers violated that order, and thus
> dismissal of their claims with prejudice, as Aetna now seeks, is
> warranted.

*Kollmeyer*, 423 B.R. at 813 n. 5; R1:11 n. 5 (italics in original).   Because the

express language of the order is clear, it means what it says.   Under basic canons of

construction, which apply with equal force to judgments, unambiguous provisions

must be enforced as written.   *See, e.g., Askanase v. LivingWell, Inc.*, 45 F.3d 103,

106 (5th Cir. 1995).   Courts are not permitted to read into any document "that

which is not there." *Id.* at 107 (citation omitted); *Gurley v. Lindsley*, 459 F.2d 268,

275 (5th Cir. 1972), *mandate withdrawn*, 466 F.2d 498 (5th Cir. 1972) ("Ordinary principles of construction apply to judgments.").

In any event, "a district court can provide, in the text of its order, a built-in timetable under which the administrative closing may automatically expire, or, alternatively, mature into a final decision." *See Lehman*, 166 F.3d at 392 n.4 (cited in *Penn West Associates*, 371 F.3d at 128). Judge Felsenthal, however, chose not to do so but instead issued an unambiguous and unconditional order of administrative closure. He declined to utilize a number of available procedures that would have placed restrictions upon the Providers.

The bankruptcy court, faced with the order as it stood, may not have agreed with the lack of any time constraints or any other conditions in it. *Kollmeyer*, 423 B.R. at 813 n. 5; R1:11 n. 5. Nonetheless, because redrafting the order through adding a provision to totally change its legal effect would be improper, the court declined to do so. Its finding was not clearly erroneous under the circumstances. Being entirely proper, it should be affirmed.

## C.  The Bankruptcy Court did not Abuse its Discretion in Ordering the Equitable Remand of the Providers' Case

A bankruptcy court is granted broad discretion to remand a claim or cause of action "on any equitable ground." *See* 28 U.S.C. § 1452(b). Alternatively, it is statutorily granted the right to abstain under 28 U.S.C. § 1334(c)(1).

Therefore, Aetna has sought this Court's reversal only of the first half of the order granting the Providers' motion to reopen.  In fact, Aetna conceded the fact that the Providers' case would be remanded once it was reopened.   R3:591 ("assuming for the sake of argument I lose on the remand, which I think I probably will . . . .").  Given the bankruptcy court's discretion, Aetna's waiver of any appeal from the second part of the court's order, which equitably remanded the case, is understandable. *See In re GGM, P.C.*, 165 F.3d 1026, 1031-32 (5th Cir. 1999).

The bankruptcy court's remarks at the hearing on the motion to reopen and abstain/remand aptly sum up the reasons for its equitable remand of the Providers' case:

> But if I get to discretionary abstention or, frankly, equitable remand, and I look at those factors, and I look at the absence of any connection to the bankruptcy case at this point, it seems like this should be back in State Court if there is an action to be tried someplace, or disposed of some place further.

R3:591.  In other words, the court concluded, "[t]here is no relationship to this bankruptcy case [*i.e.*, Adversary Proceeding No. 04-3005] any longer.  None." R3:586.

The court came to its conclusion after having carefully analyzed and weighed the fourteen factors typically considered in deciding whether to abstain and/or remand.  Because no single factor is determinative, it balanced the factors in light of the circumstances of this case. *See, e.g., Northern Natural Gas v. Sheerin*

*Gas Co.*, 2003 WL 22594457, * 6 & n. 40 (W.D. Tex. Oct. 20, 2003).  The court's careful analysis and the list of factors it considered is found in its opinion and order.  *See Kollmeyer*, 423 B.R. at 815-16; R1:15-17.

In summary, the court held that six of the 14 factors were either neutral or did not apply.  Every other factor weighed in favor of remand.  *Id.* at 816-17; R1:16-17.  Therefore, the court concluded properly that "[o]n balance, consideration of the relevant factors leads to the inexorable conclusion that remand is appropriate." *Id.* at 816; R1:17.

Consequently, even if Aetna had not waived its appeal, equitable remand was entirely proper.  And, under an abuse of discretion standard, the court acted well within its discretion.

## CONCLUSION

For reasons set out above, the bankruptcy court's order reopening the Providers' case and equitably remanding it is proper.  This Court should affirm the order in all respects.

Respectfully submitted,


/s/  J. Ken Johnson
J. Ken Johnson
Sylvia Davidow
FLEMING & ASSOCIATES, L.L.P.
1330 Post Oak Blvd., Suite 3030
Houston, Texas 77056
Telephone:   (713) 621-7944
Facsimile:    (713) 621-9638

Kevin D. McCullough
ROCHELLE MCCULLOUGH LLP
325 N. St. Paul, Suite 4500
Dallas, TX 75201
Telephone:   (214) 953-0182
Facsimile:    (214) 953-0185

**ATTORNEYS FOR APPELLEES**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copies of the above and foregoing instrument have been served by electronic CM/ECF filing, on this 13th day of May, 2010, as follows:

Jason S. Brookner
Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201

John B. Shely
Andrews Kurth LLP
600 Travis, Suite 4200
Houston, Texas 77002

**Counsel for Appellants**

/s/  J. Ken Johnson
J. Ken Johnson