IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AETNA LIFE INSURANCE COMPANY and AETNA U.S. HEALTHCARE, INC., | § § § § | |
| Appellants, | § | |
| v. | § § | Civil Action No. **3:10-CV-0684-L** |
| KENNETH KOLLMEYER, M.D., and LAWRENCE ALTER, M.D., | § § § | |
| Appellees. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is the appeal of Appellants Aetna Life Insurance Company and Aetna U.S. Healthcare, Inc. After consideration of the briefs, the record on appeal, and the applicable law, the court **affirms** the bankruptcy court's February 9, 2010 Memorandum Opinion and Order.

## I. Factual and Procedural Background

The material facts are undisputed. Therefore, the court will summarize only those facts necessary for clarity and understanding of this opinion. Appellants Aetna Life Insurance Company and Aetna U.S. Healthcare, Inc. (collectively, "Aetna" or "Appellants") together are an insurance company that operates health maintenance organization ("HMO") insurance plans in Texas. One of the plans was a Medicare Part C HMO ("Medicare + Choice" or "M+C") plan formerly known as NylCare 65. Appellees Kenneth Kollmeyer, M.D., and Lawrence Alter, M.D., (collectively, referred to as "Appellees" or "Providers") both rendered covered healthcare services to enrollees in the Aetna HMO plan. Because Aetna operated a Medicare HMO Plan, it received monthly capitated funds from the Healthcare Financing Administration to provide healthcare benefits to eligible plan participants. In turn, Aetna made monthly payments to Heritage Southwest Medical

**Memorandum Opinion and Order- Page 1**

Group, P.A. ("Heritage"), the third-party entity that it had delegated to perform healthcare related administrative services on its behalf. Among other duties, Heritage was responsible for paying the Providers for their healthcare services.

On January 5, 2001, while Heritage was functioning as Aetna's third-party delegated entity, an involuntary bankruptcy petition was filed against Heritage. Because of its bankruptcy, Heritage failed to compensate the Providers for the healthcare services they rendered to Aetna enrollees. On November 1, 2001, the United States Bankruptcy Court for the Northern District of Texas entered an order against Heritage for relief under Chapter 7 of the Bankruptcy Code.

On July 24, 2003, the Providers sued Aetna in an Austin state court, seeking payment for healthcare services they provided to enrollees in NylCare 65. The Providers' lawsuit only asserted Texas statutory and common-law claims. The Providers' Petition did not sue Debtor Heritage, nor did it assert any federal claims against Aetna. On October 3, 2003, the Providers amended their state Petition. Two weeks later, on October 16, 2003, Aetna removed the Providers' action to the United States Bankruptcy Court for the Western District of Texas, Austin Division. On December 8, 2003, Aetna's motion to transfer venue was granted, and the Providers' case was transferred to the United States Bankruptcy Court for the Northern District of Texas.

On January 26, 2004, Aetna moved to dismiss the action for lack of subject matter jurisdiction. Aetna contended that although the Providers had not brought any federal claims, they were actually seeking reimbursement for Medicare related healthcare services. Aetna further maintained that as a precondition to judicial review, the Providers were required to exhaust their Medicare Part C administrative remedies under federal law.

On May 20, 2004, the bankruptcy court concluded that it would not dismiss the Providers' case for lack of jurisdiction but would administratively close the adversary proceeding without prejudice to allow the Providers to exhaust their administrative remedies under Medicare. *Kollmeyer v. Aetna Life Ins. Co. (In re Heritage Southwest Medical Group, P.A.),* 309 B.R. 916, 922 (Bankr. N.D. Tex. 2004). Further, the court denied the Providers' motion to remand and/or abstain, indicating that it would "revisit discretionary abstention" should the administrative process not apply to the trustee's and Providers' claims. *Id.* at 922. On June 10, 2004, the bankruptcy court denied the Providers' motion to reconsider its May 20, 2004 order.

While the case was administratively closed, the Fifth Circuit and Texas Supreme Court eliminated the requirement of exhaustion of administrative remedies in Medicare claims. In 2004, the Fifth Circuit determined that Medicare Part C did not require exhaustion of administrative remedies for federal claims involving Medicare Part C. *RenCare, Ltd. v. Humana Health Plan of Tex., Inc.,* 395 F.3d 555 (5th Cir. 2004). Further, the Texas Supreme Court issued a similar opinion in 2007, determining that, under Texas law, parties are not required to exhaust administrative remedies for Texas state law claims relating to Medicare Part C. *Christus Health Gulf Coast v. Aetna, Inc.,* 237 S.W.3d 338 (Tex. 2007).

On August 30, 2009, the Providers moved to reopen their case and renewed their motion for abstention and remand. The Providers contended that both the Fifth Circuit and Texas Supreme Court cases eliminated the exhaustion requirement of Medicare Part C and that their case therefore should be reopened. Aetna opposed the motion, contending that the Providers' lack of diligence in attempting to exhaust the administrative remedies rendered the claims time-barred. On February

9, 2010, the bankruptcy court granted the Providers' motion and ordered the case reopened and remanded.

Aetna now appeals the bankruptcy court's decision to reopen the case, but it does not appear to appeal the court's decision to remand. The Providers respond that the bankruptcy's court's memorandum opinion and order is legally correct and should be affirmed in all respects.

## II. Legal Standard-Bankruptcy Appeals

In a bankruptcy appeal, district courts review bankruptcy court rulings and decisions under the same standards employed by federal courts of appeal: a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law *de novo*. *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003); *Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re National Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir.), *cert. denied,* 531 U.S. 871 (2000).

A bankruptcy court's "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." Fed. R. Bankr. P. 8013. A finding is clearly erroneous and reversible only if, based on the entire evidence, the reviewing court is left "with the definite and firm conviction that a mistake has been made." *In re Dennis*, 330 F.3d at 701 (citation omitted). In conducting this review, the court must give due regard to the opportunity of the bankruptcy judge to determine the credibility of the witnesses. *Id.*; *Young v. Nat'l Union Fire Ins. Co. (In re Young),* 995 F.2d 547, 548 (5th Cir. 1993) (quoting Fed. R. Bankr. P. 8013).

## III. Analysis

### A. Findings of Fact and Conclusions of Law

As the court previously noted, the facts of this case upon which the bankruptcy court relied are really not in dispute. Given the manner in which the parties have briefed the issues, it appears

to the court that the parties have merged the findings of fact and conclusions of law, as the briefing centers on the legal conclusions made by the bankruptcy court in reaching its decision. In any event, whether an issue is classified as a finding of fact or a conclusion of law, the court reaches the same result, and it will discuss them together.

### 1. Diligence

Aetna contends that under general legal principles, the Providers were required to act with due diligence in pursuing their claims, either by initiating the appropriate Medicare review, or by timely moving to reopen the case, if the administrative remedies were shown to be inapplicable. Appellees respond that they were diligent in pursing their claims. The Providers contend that their decision not to follow *RenCare* but to wait for the Texas Supreme Court to determine the issue in *Christus* makes legal sense, as the Providers brought only Texas common law and statutory claims.

Aetna replies that the bankruptcy court's 2004 Order required the Appellees to diligently pursue their remedies or risk dismissal of their claims. Further, Aetna contends that the Providers' arguments in defense of the bankruptcy court's allegedly erroneous and dismissive treatment of *Rencare* and the Providers' lack of diligence are neither factually credible nor legally valid. Aetna also contends that the Providers could have appealed the 2004 Order, but made no attempt to do so.

The court agrees with Appellees and determines that the bankruptcy court did not err in determining that there was no lack of diligence by Appellants, which warranted reopening of the case. The court does not agree with Appellants' argument that the Providers "sat idle" or "slept on" their claims. Further, the court finds unavailing Appellants' primacy argument that Appellees are bound by the decision in *RenCare*. Appellees are not bound by *RenCare* and rightfully waited until after the Texas Supreme Court's decision in *Christus* to reopen their case, as they asserted only state

law claims. Moreover, the Appellants take out of context the bankruptcy court's remarks regarding *RenCare*, and the court does consider the remarks to be dismissive of *RenCare* as Appellants contend. Although this litigation may have lasted longer than expected, the court determines it patently unreasonable and unfair to dismiss the Providers' suit for lack of diligence. A dismissal would render Providers completely unable to pursue their claims.

With respect to their argument that the Providers could have appealed the 2004 order, Appellants misconstrue the law regarding an administrative closure. Under Fifth Circuit authority, an administrative closure is a procedural device used

> to remove from [a court's] pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending). The effect of an administrative closure is no different from a simple stay, except that it affects the count of active cases pending on the court's docket; *i.e.* administratively closed cases are not counted as active.

*Mire v. Full Spectrum Lending Inc.,* 389 F.3d 163, 166 (5th Cir. 2004) (citations omitted). In other words, an administrative closure is "equivalent to a stay, prohibiting appellate review." *CitiFinancial Corp. v. Harrison,* 453 F.2d 245, 250 (5th Cir. 2006) (footnote and citations omitted). An administratively closed case is one that is active on the court's docket and may be reopened upon request of the parties or on the court's own motion. In such circumstances, the case is not appealable; there is no final order or judgment. *Mire,* 389 F.3d at 167. Given the nature of an administrative closure, the court refuses to hold that Appellees were not diligent in pursuing their claims. Accordingly, the bankruptcy court correctly determined that there was not a lack of diligence by the Providers.

## 2. Prejudice

Aetna contends that it more than amply alleged and demonstrated the prejudice it suffered as a result of the Providers' decision to reopen the Adversary Proceeding. Specifically, Aetna contends that the prejudice is exacerbated in that the Providers' putative claims arise out of allegedly unpaid medical services rendered between September 2001 and November 2002, more than nine years ago. Appellants further contend that during the years since the bankruptcy court's order, Aetna has settled with the Trustee, and the potential testimony of witnesses involved in the handling of the thousands of underlying medical claims has grown stale. Appellees respond that Aetna's general and vague allegations of prejudice are insufficient to support a determination of undue prejudice. Appellants reply that they presented specific and credible allegations of prejudice that Aetna would suffer as a result of the Providers' inexplicable delay, including

> (i) the absence of complete records related to 'thousands of underlying medical claims (for services performed by hundreds of providers in 2001-2002)'; (ii) the unavailability and lapsed memories of witnesses who handled those claims; and (iii) Aetna's settlement with the trustee . . . of Aetna's claims against the Heritage estate, in which Aetna waived more than $12 million in claims.

Appellants' Reply Br. at 17. The court disagrees.

It was reasonable for the bankruptcy court to conclude that Appellants' allegations of prejudice were insufficient to warrant denying Appellees' motion to reopen and consequently dismissing this action. In reopening the case, Appellees assert and pursue the same claims that were originally pleaded in 2003. Thus, Appellants were on notice of the claims, should have retained the documents, should have obtained information regarding witnesses that are critical in asserting their defenses, or should have taken other means to gather information regarding the validity of the claims. Preserving vital evidence is basic and fundamental to avoiding legal prejudice. It is fatuous

**Memorandum Opinion and Order- Page 7**

to believe that a party with Aetna's level of expertise and sophistication involving litigation matters would not take steps to preserve records and testimony related to these claims, especially in absence of any dismissal or permanent resolution of the claims.  Moreover, Appellants offer no proof that they will or have been prejudiced.  The record reflects only argument by counsel.  The bankruptcy court's decision to refuse to deny Appellees an opportunity to pursue their claims was not contrary to law.  Consequently, the court determines that there is no undue prejudice to Appellants and that this argument is not a basis for reversing the bankruptcy court's decision.

### 3. Time Restrictions

Appellants further contend that the bankruptcy court erred in concluding that the 2004 Order did not place any time restrictions on the instruction to exhaust the administrative remedies. Appellees respond that the bankruptcy court properly found that no deadlines existed because the express language of the previous order is clear and does not impose any deadlines. The court agrees with Appellees.

The 2004 Order provided that "the motions to remand and/or abstain [were] denied, without prejudice.  It [was] further ordered that the adversary proceedings [were] administratively closed pending exhaustion of administrative remedies."  1R30.  The court cannot identify *any* express or implied language indicating a deadline to reopen the case.  It was reasonable for the bankruptcy court to determine that the 2004 Order did not impose a deadline; and, it *would* have been legally incorrect for the court to read a deadline into the order.  Consequently, the court holds that the bankruptcy court properly held that the 2004 Order imposed no deadlines and determines that this argument is not a basis for reversing the bankruptcy court's decision.

####        4.      Statute of Limitations and Equitable Estoppel

Appellants further contend that the bankruptcy court erred in concluding that the Providers' decision to not appeal the 2004 Order had no bearing on the issue of whether dismissal of the case was appropriate or whether the statute of limitations had expired. Specifically, Appellants contend that *Kobleur v. Group Hospitalization & Med. Servs., Inc.,* 954 F.2d 705 (11th Cir. 1992), establishes that the Providers' alleged failure to appeal the 2004 Order, combined with waiting almost five years to request that the case be reopened, supports the dismissal of the Providers' claims. Appellees respond that *Kobleur* is inapposite to this case because it does not deal with administrative closure but rather involves the dismissal without prejudice of a case from an active docket. Appellees also contend that Aetna's reliance on the opinion is not controlling because it is an Eleventh Circuit decision. The court agrees.

In *Kobleur*, the Eleventh Circuit stated that an administrative closure is no different than dismissal of a case without prejudice. *Id.* at 708. The procedural posture, however, is distinguishable because in *Kobleur* the issue was whether an order administratively closing a case but retaining jurisdiction, pending exhaustion of remedies, was a final, appealable order. The Eleventh Circuit held that it was. The court does not see how the holding in *Kobleur* means that dismissal is required in this case or that the statute of limitations on the underlying claims has expired. *Kobleur* was not a case dealing with a statute of limitations, and therefore has no applicability to this case. In any event, *Kobleur* is not binding on this court. Moreover, *Kobleur* is contrary to applicable Fifth Circuit authority regarding administrative closures. *See* Section III(A)(1), *supra*.

The court further agrees with the Appellees and concludes that the bankruptcy court did not err in determining that administratively closed proceedings do not implicate the statute of limitations or equitable tolling. Aetna contends that Appellees' lack of diligence caused the statute of limitations to run. Aetna further contends that the administrative closing of the case did not toll the statute of limitation until the case was reopened and, at most, only tolled the statute of limitations until the administrative remedies were exhausted.

The Providers respond that Aetna improperly disregards the function and the effect of the administrative closure of a case. The Providers contend that "Aetna continues to erroneously conflate the administrative closure/stay procedure with two legally distinguishable case termination procedures: dismissal without prejudice of a case pending on a court's active docket; and, dismissal with prejudice for want of prosecution of a case on the active docket." Appellees' Resp. Br. at 14. The Providers contend that administratively closed proceedings do not raise issues of limitations, diligence or equitable tolling, because those proceedings are *stayed,* not dismissed. The Providers also contend that a stay does not raise limitations, equitable tolling, or diligence issues because the purpose of an administrative closure is to affect the count of active cases pending on the court's docket, and such a closure has no jurisdictional significance. The Providers additionally contend that their claims are not subject to statute of limitations concerns because limitations concerns may be raised only in cases dismissed with or without prejudice from an active docket, not in cases that have been stayed or administratively closed and placed on an inactive docket. The Providers also contend that because their case was administratively closed, their claims are not time-barred. The Providers further contend that equitable tolling is not implicated because the case was stayed and remained inactive. Last, the Providers contend that the order of administrative closure was not

"final" for appellate purposes. The court agrees with these arguments. As the court has already addressed many of the contentions in this opinion, it will not repeat those discussions.

As previously stated, the statute of limitations does not bar the Providers' claims. Appellants rely on an unreported case *Walsh Securities, Inc. v. Cristo Prop. Mgt., Ltd.,* No. Civ. A. 97-3496 (WGB), 2006 WL 166491 (D.N.J. Jan. 23, 2006), to support their position that Appellees' lack of diligence caused the statute of limitations to expire. Appellants contend that *Walsh* is similar to this case because in both cases the moving parties were not diligent in pursuing their obligations and allowed the statute of limitations to expire. The court is unpersuaded by this argument.

*Walsh* is factually inapposite to this case. In *Walsh*, a plaintiff in a pending action that had been administratively closed, after the vacatur of the administrative closure, filed an amended complaint that, for the first time, asserted claims against defendant that had not previously been a party to the action. The claims were asserted *after the statute of limitations had run*. The plaintiff contended that the administrative closure tolled the statute of limitations, but the district court disagreed, holding nothing had prevented the plaintiff from reopening the action for the limited purpose of asserting a claim against the nonparty to prevent the statute of limitations from running. This case is distinguishable. Unlike *Walsh*, the claims in this case were originally asserted within the statute of limitations against a Defendant that was a party to the initial suit. Further, *Walsh* is nonbinding on this court, as it is a New Jersey district court case. Since the statute of limitations is not implicated, the court does not address the parties' arguments regarding the doctrine of equitable tolling. Accordingly, the bankruptcy court did not err in determining that administratively closed proceedings do not raise issues of statute of limitations or equitable tolling.

### B. Remand

Aetna only mentions remand obliquely, and, frankly, the court does not believe that this issue has been preserved for appeal purposes. In any event, the court concludes that the bankruptcy court did not legally err or abuse its discretion in remanding the case. A bankruptcy court is vested with broad discretion to remand an action on any equitable ground. 28 U.S.C. § 1452(b). The court is convinced that the bankruptcy court carefully weighed and considered the fourteen factors that are typically considered in deciding whether to remand a case.[*]

### IV. Conclusion

For the reasons stated herein, the court **affirms** the bankruptcy court's February 9, 2010 Memorandum Opinion and Order. Appellants' appeal is hereby **dismissed.** Pursuant to Bankruptcy Rule 8016, the clerk of the court is directed to prepare, sign, and enter judgment upon receipt of and in accordance with this memorandum opinion and order. All allowable and reasonable costs are to

---

[*]The factors to consider include:

> (1) the effect or lack thereof on the efficient administration of the estate if the court recommends [remand or] abstention; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping to by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action.

*In re Encompass Servs. Corp.,* 337 B.R. 864, 878 (Bankr. S.D. Tex. 2006) (*quoting Broyles v. U.S. Gypsum Co.,* 266 B.R. 778, 785 (E.D. Tex. 2001)).

be taxed against Appellants. The court **directs** the clerk of the court to transfer this action insofar as it relates to the Providers' state law claims to the 345th District Court, Travis County, Texas.

**It is so ordered** this 31st day of March, 2011.

Sam A. Lindsay
United States District Judge